# EXHIBIT 1

ORIGINAL

Code Name: Norgrain 89
RECOMMENDED BY
THE BALTIC AND INTERNATIONAL MARITIME COUNCIL (BIMCO)
THE FEDERATION OF NATIONAL ASSOCIATIONS OF SHIP BROKERS AND AGENTS (FONASBA)

AMENDED MAY 1989

# NORTH AMERICAN GRAIN CHARTERPARTY 1973

ISSUED BY THE ASSOCIATION OF SHIP BROKERS AND AGENTS (U.S.A.) INC.

*Piraeus* 25th APRIL 2016

~~19~~ ........................................................................

Owners — IT IS THIS DAY MUTUALLY AGREED, between Sea Master Special Maritime Enterprises

Note. Delete as appropriate — Owners / ~~Disponent Owners~~ / ~~Time-chartered Owners~~ / ~~Chartered Owners~~ of the *M/V* SEA MASTER ~~SS Tween Decker~~ Self/~~Non-Self~~ Trimming Bulk Carrier M.V. ~~Tanker~~ ........ ~~Call Sign~~ ........

Description of Vessel — ~~Built~~ ........ ~~at~~ ........ ~~of~~ ........ ~~tons of 2,240 lbs.~~

~~deadweight all told, or thereabouts, and with a grain cubic capacity available for cargo of~~ ........ ~~cubic feet (including~~ ........ ~~cubic feet in self-bleeding wing spaces)~~ *See Clause 50*

........................................................................

Classification — Classed B.V. ~~in~~ TRADING

Note: Insert vessel's itinerary.

........................................................................

Charterers — and *Agribusiness United DMCC* ........ of *DUBAI/United Arab Emirates* Charterers.

Loading Port(s) — 1. That the said vessel, being tight, staunch strong and in every way fit for the voyage, shall with all convenient speed proceed to *or in Charterers' option 1*

ONE OR TWO ARGENTINA UPRIVER PORT(S) NOT ABOVE TIMBUES and there load
OWNS TO SATISFY THEMSELVES WITH PORT RESTRICTIONS



at *one* ............................................................ safe loading berth(s) in Charterers' option.

Description of Cargo

always afloat at *,* *respectively not always afloat but safely aground at* *, provided at ,* *the vessel can safely lie always afloat at any time of tide, except at such places where it is customary for similar size vessels to safely lie aground,* a full and complete */~~part~~* cargo of

AGRIS COMMODITY NON HARMFUL NON IMO 1 Hold abt 6/7,000mts of Soybean Meal SF 55 WOG + 1 hold abt 6/7,000mts of Soyahull Pellets SHP SF 60 WOG + CORN SF 46 WOG 25,000Mts 10%

in case on uncertainty about stowage factor, same is to be determined by GAFTA approved laboratory.

*Owners have provided intended stowage plan* ~~*basis 32 feet salt water arrival draft as per Clause 65.*~~ ............

~~at Charterers' option~~ ............ ~~tons of 2,240 lbs./1,000 Kilos *~~ ............ ~~% more or less, quantity at Owners' option.~~

Notice and Loading Port Orders

1\. Owners are to give Charterers (or their Agents) (telegraphic *E-mails* address " *abou@agribiz.ae / julie@agribiz.ae / oper@agutd.com* " ~~telex number~~ *and agents at loading port* ............). ~~15 and 7~~ *5/3/2* days notice of vessel's expected readiness to load date, and approximate quantity of cargo required with the ~~15~~ *5* days' notice, such quantity to be based on cargo of Heavy Grain, unless the cargo composition has been declared or indicated.

The Charterers are to be kept continuously advised by telegram/telex/*E-mail* of any alteration in vessel's readiness to load date.

Master to apply to ............ (telegraphic address " ............ ")

for first or sole loading port orders 144 hours before vessel's expected readiness to load date but not sooner than 144 hours before the laydays in Clause 4 and Charterers or their Agents are to give orders for first or sole loading port within 72 hours of receipt of Master's application, unless given earlier.

~~Orders for second port of loading, if used, to be given to the Master not later than~~ ............

............

Master is to give Charterers (or their Agents) 72 and 12 hours notice of vessel's estimated time of arrival at first or sole loading port together with vessel's estimated readiness to load date.

Vessel Inspection

3\. *Vessel is to load under inspection of* Argentinian entities / authorities ~~*National Cargo Bureau, Inc in U.S.A. ports or of the Port Warden in Canadian ports.*~~ *Vessel is also to load under inspection of a Grain Inspector licenced/authorized by the* ~~*United States Department of Agriculture pursuant to the U.S. Grain Standards*~~ *Act* ~~*and/or of a Grain Inspector employed by the Canadian Department of Agriculture as required by the appropriate authorities.*~~ Argentinian entities / authorities

~~If vessel loads at other than U.S. or Canadian ports, she is to load under inspection of such national and/or regulatory bodies as may be required.~~

Vessel is to comply with the rules of such authorities, and shall load cargo not exceeding what she can reasonably stow and carry over and above her Cabin, Tackle, Apparel, Provisions, Fuel, Furniture and Water. Cost of such inspections shall be borne by Owners.

Laydays/ Cancelling

4\. Laytime for loading, if required by Charterers, not to commence before ~~0800~~ *00:00 hours local time* on the 24th of April 2016 ....19 ............

Should the vessel's notice of readiness not be tendered and accepted as per Clause 18 before ~~1300~~ *24:00 hours local time* on the 29th of April 2016 ....19 ............ the Charterers have the option of cancelling this Charterparty any time thereafter, but not later than one hour after the tender of notice of readiness as per Clause 18.

Destination

5\. On being so loaded, the vessel shall proceed to

CHOPT 1 OR 2 OR 3 SP : (CASABLANCA/JORF LASFAR) AND/OR AGADIR OPTION 3 DISPORTS CASABLANCA/JORF AND AGADIR AND 1 SP CASA/ORAN RANGE (INCL ORAN) OWNS TO SATISFY THEMSELVES WITH PORT RESTRICTIONS

~~*Vessel's salt water arrival draft at discharging port not to exceed 32 feet. See also Clause 68 (USEC discharge option Clause).*~~

as ordered by Charterers/Receivers*, and deliver the cargo, according to Bills of Lading at *one* ............

ORIGINAL

safe discharging berths in Charterers' option, vessel being always afloat, on ~~being*~~/having been* paid freight as per Clauses 8 and 9.

**Discharging Orders**

~~Master to apply by radio to~~ ........................................................ ~~(telegraphic address*~~ ......................................................)
~~for first or sole discharging port order 96 hours before vessel is due off it*~~ . ~~and they are~~ *Charterers/Receivers or their Agents* to give first or sole discharging port orders by radio within 48 hours of
receipt of Master's application unless given earlier. If Master's application is received on a Saturday, the time allowed *to Charterers / Receivers or their agents* shall be 52 hours instead of 48 hours.

~~Orders for second and/or third port(s) of discharge are to be given to the Master not later than vessel's arrival at first or subsequent port.~~

Master to radio Charterers/Receivers (or their Agents) 72 and 24 hours notice of vessel's estimated time of arrival at first or sole discharging port. Charterers/Receivers (or their Agents) are to be kept continuously advised by radio/telegram/telex of any alterations in such estimated time of arrival.

**Bills of Lading**

6. The Master is to sign Bills of Lading as presented on the ~~North American Grain~~ *Gencon* Bill of Lading form without prejudice to the terms, conditions and exceptions of this Charterparty. If the Master elects to delegate the signing of Bills of Lading to his Agents he shall give them authority to do so in writing, copy of which is to be furnished to Charterers ~~if so required~~. *See also Clauses 62 to 64.*

**Rotation of Ports**

7. ~~Rotation of loading ports is to be in Owners'*/Charterers'* option.~~

~~Rotation of discharging ports is to be in Owners'*/Charterers'* option, but if more than two (2) ports of discharge are used rotation is to be geographic~~ .................................. ~~of~~ ..................................

**Freight**

8. Freight to be paid as follows: *all basis per metric ton FIO spout and/or grab trimmed as per elevator weight which to be Bills of Lading quantity with weight both ends ascertained as per customs of the port only, with any additional trimming, if required by Master or Port Authorities, over spout and/or grab trimming to be for Owners' account/time/expenses and disbursement accounts fully for Owners' account at both ends:* ..................................

OPTION A: US$24. 75 PMT bss 1/2: AGADIR + CASA or JORF
OPTION B: US$26.25 PMT bss 2/2: AGADIR + CASA or JORF
OPTION C: US$28.25 PMT bss 2/3: AGADIR + CASA/JORF + 1 SP CASA/ORAN RANGE Algerian qtty 17,500 10% FOR OPTION C
ALL GEO ROTATION

~~per ton of 2,240 lbs./1,000 Kilos.*~~

~~Charterers have the option of ordering the vessel to load at~~ ..................................

..................................

~~in which case the rate of freight to be~~ ..................................

..................................

..................................

~~per ton of 2,240 lbs./1,000 Kilos.*~~

~~Charterers/Receivers have the option of ordering the vessel to discharge at~~ ..................................

..................................

ORIGINAL

~~in which case the rate of freight to be~~ ...

~~per ton of 2,240 lbs/1,000 Kilos.*~~

~~If more than one port of loading and/or discharging is used, the rate of freight shall be increased by~~ ...

... ~~per ton of 2,240 lbs./1,000 Kilos.* for each additional loading and/or discharging port on the entire cargo.~~

Freight Payment — 9 (a) ~~Freight shall be fully prepaid on surrender of signed Bills of Lading in~~ ... ~~in~~ ... ~~currency to~~

*See Clause 57.*

~~on Bill of Lading weight, discountless, not returnable, vessel and/or cargo lost or not lost. Freight shall be deemed earned as cargo is loaded on board.~~

~~Once the Bills of Lading have been signed, and Charterers call for surrender of Original Bills of Lading against freight payment above, it will be incumbent upon Owners or their Agents to comply immediately with such call for surrender during office hours, Mondays to Fridays inclusive.~~

Other) (b) *Once the Bills of Lading have been signed and Charterers call for surrender of Original Bills of Lading against freight payment (see Clause 57) it will be incumbent upon the Owners or their Agents to comply immediately with such call for release during office hours, Mondays to Fridays inclusive.*

Cost of Loading and Discharging — 10 (a)* Cargo is to be loaded and spout trimmed (to Master's satisfaction in respect of seaworthiness) free of expense to the vessel. Cargo is to be discharged free of expense to the vessel (to Master's satisfaction in respect of seaworthiness).

(b)* ~~Cargo is to be loaded and trimmed at Owners' expense. Cargo is to be discharged free of expense to the vessel (to Master's satisfaction in respect of seaworthiness).~~

Stevedores at Loading Port(s) and Discharging Port(s) — 11. Stevedores at loading Port(s) are to be appointed by Charterers*~~/Owners*~~ and paid by Charterers*~~/Owners.*~~

~~If stevedores are appointed by Owners, they are to be approved by Charterers at loading port(s), and such approval is not to be unreasonably withheld.~~ Stevedores at discharging port(s) are to be appointed and paid for by Charterers/Receivers*.

In all cases, stevedores shall be deemed to be the servants of the Owners and shall work under the supervision of the Master.

Bulk Carrier and Wing Spaces — 12. (a) The vessel is warranted to be a self-trimming bulk carrier*~~/non-self-trimming bulk carrier.*~~

(b) Cargo may be loaded into wing spaces if the cargo can bleed into centerholds. Wing spaces are to be spout trimmed; any further trimming in wing spaces and any additional expenses in discharging are to be for Owners' account, and additional time so used is not to count as laytime or time on demurrage.

Overtime — 13 (a) Expenses

ORIGINAL

(i) All overtime expenses at loading and discharging ports shall be for account of the party ordering same.

(ii) If overtime is ordered by port authorities or the party controlling the loading and/or discharging terminal or facility all overtime expenses are to be ~~equally shared between the Owners and~~ Charterers *at both ends.* ~~/Receivers.~~

(iii) Overtime expenses for vessel's officers and crew shall always be for Owners' account.

(c) Time Counting
~~If overtime ordered by Owners be worked during periods excepted from laytime the actual time used shall count; if ordered by Charterers/Receivers, the actual time used shall not count; if ordered by port authorities or the party controlling the loading and/or discharging terminal or facility half the actual time used shall count.~~

Separations — 14. Cost of cargo separations, including labor used for laying same, to be for Charterers' account unless required by Owners, in which case all resultant expenses shall be borne by the Owners. Separations ordered by Charterers shall be made to Master's satisfaction (but not exceeding the requirements of the competent authorities).

Securing — 15. (a) For Owners' account: *Any bagging/trapping/securing shall be for Owners' account.*
~~Any securing required by Master, National Cargo Bureau or Port Warden for safe trim/stowage to be supplied by and paid for by Owners, and time so used not to count as laytime or time on demurrage. Bleeding of bags, if any, at discharge port(s) to be at Owners' expense, and time actually lost is not to count.~~

*Delete para (a) or (b) as appropriate*

(b) ~~For Charterers' account~~
~~Any securing required by Master, National Cargo Bureau or Port Warden for safe trim/stowage to be supplied by and paid for by Charterers, and time so used to count as laytime or time on demurrage. Bleeding of bags, if any, at discharge port(s) to be at Charterers'/Receivers' expense.~~

Fumigation — 16. *See Clause 48.* ~~If after loading has commenced, and at any time thereafter until completion of discharge, the cargo is required to be fumigated in vessel's holds, the Owners are to permit same to take place at Charterers' risk and expense, including necessary expenses for accommodating and victualling vessel's personnel ashore.~~

~~The Charterers warrant that the fumigants used will not expose the vessel's personnel to any health hazards whatsoever, and will comply with current IMO regulations.~~

~~Time lost to the vessel is to count at the demurrage rate.~~

Opening/Closing Hatches — 17. *(a)* At each loading and discharging port, cost of first opening and last closing of hatches and removal and replacing of beams, if any, shall be for Owners' account. Cost of all other opening and closing of hatches, removal and replacing of beams shall be for Charterers'/Receivers' account.
*b) At each loading and discharging port, cost of all opening and last closing of hatches and removal and replacing of beams, if any, shall be for Owners' account.*

18. (a) Notice of Readiness
Notification of vessel's readiness to load ~~and discharge~~ at the ~~first or~~ sole loading ~~and discharging~~ port shall be delivered in writing *or via email or fax or telex* at the office of Charterers/~~Receivers~~ *Shippers or their agents* between ~~0900~~ *0800* and ~~1700~~ *1600* on all days except Sundays and holidays, and between 0900 and 1200 on Saturdays. *Charterers/Shippers shall not be required to accept Notice of Readiness to load on Saturdays after 1200 or on Sundays or holidays.* Such notice of readiness shall be delivered when the vessel is in the loading ~~or discharging~~ berth *and is in all respects ready to load.* ~~if vacant, failing which from a lay berth or anchorage within limits of the port, or otherwise as provided in Clause 18 (b) hereunder.~~

*Notification of vessel readiness to discharge at the discharging Port to be tendered by master or vessel agents shall be delivered by Email or by fax or by telex during official office working hours Mondays though Fridays between the hours of 0800-1700 hours.*
*Charterers/receivers should not be required to accept the notice of Readiness to discharge on Saturdays, Sundays and holidays.*

Time — (b) Waiting for Berth Outside Port Limits
*At loading and discharging ports, if the berth is occupied upon arrival then the Notice of Readiness can be tendered via cable/telex/fax basis whether in port or*

ORIGINAL

*not / whether in berth or not / whether customs cleared or not / whether in free pratique or not.*

Loading

If the vessel is prevented from entering the *commercial* limits of the loading/discharging port(s) because the first or sole loading/discharging berth or a lay berth or anchorage is not available ~~within the port limits,~~ or on the order of the Charterers/Receivers or any competent official body or authority, and the Master warrants that the vessel is physically ready in all respects to load or discharge. *the time spent at usual waiting place outside of commercial limits of the port shall count against Laytime. Such Laytime shall count as per Clause 18A from vessel's arrival at such usual waiting place and will continue to run as per Clause 19.* ~~the Master may tender vessel's notice of readiness, by radio if desired, from the usual anchorage outside the limits of the port, whether in free pratique or not, whether customs cleared or not. If after entering the limits of the loading port, vessel fails to pass inspections as per Clause 18 (e) any time so lost shall not count as laytime or time on demurrage from the time vessel fails inspections until she is passed, but if the delay in obtaining said passes exceeds 24 running hours then all time spent waiting outside the limits of the port shall not count.~~

(c) Commencement of Laytime

~~*Following receipt of valid Notice of Readiness to load or discharge as above the laytime will commence at 12.00 hours on the same working day if valid Notice of Readiness is tendered as above before noon respectively at 08.00 hours on the next working day if valid Notice of Readiness is tendered as above after noon.*~~ ~~Following receipt of notice of readiness laytime will commence at 0800 on the next day not excepted from laytime. Time (not excepted from laytime) actually used before commencement of laytime shall count.~~

LAYTIME TO COMMENCE AT ALL PORTS (LOADPORTS AND DISPORTS) NEXT WD AT 8AM. TIME NOT REVERSIBLE. FRESH NOR TO BE TENDERED AT ALL PORTS BENDS AND NOR WILL BE ACCEPTED ONLY UPON VSL PASSING LOCAL AUTHORITIES INSPECTIONS

(d) ~~Subsequent Ports~~

~~At second or subsequent port(s) of loading and/or discharging, laytime or time on demurrage shall resume counting from vessel's arrival within the limits of the port or as provided in Clause 18 (b) if applicable.~~

(e) Inspection

~~Unless the conditions of Clause 18 (b) apply, at first or sole~~ *At the* loading port Master's notice of readiness shall be accompanied by pass of the Argentinian Authorities/entities National Cargo Bureau/~~Port Warden~~ and Grain Inspector's certificate of vessel's readiness in all compartments to be loaded, for the entire cargo covered by the Charterparty as per Clause 3. ~~In the event that vessel loads in subsequent port(s) and is required to re-pass inspections in these ports, any time lost thereat in securing the required certificates shall not count as laytime or time on demurrage.~~

Laytime

19. (a). ~~Vessel is to be loaded and discharged within ........................................ working days of twenty-four (24) consecutive hours each (weather permitting). Sundays and Holidays excepted.~~

(b) Vessel is to be loaded ~~within~~ *at the average rate of* 7,000 *metric tons per weather* working days of twenty-four (24) consecutive hours each *or prorata Saturdays afternoon, Sundays and holidays excluded even if used with time from Saturdays noon or 1700 hours on days preceding a holiday to 0800 hours Mondays respectively 0800 hours on the next working day not to count even if used.* ~~(weather permitting). Sundays and Holidays excepted.~~

Rate pro rata

19. (b) or (c)

(c) Vessel is to be discharged in Morocco ~~at~~ the average rate of *5,000 metric* tons ~~of 2,240 lbs.~~*/1,000 Kilos.* per *weather* working day of twenty-four (24) consecutive hours *or prorata Saturdays, Sundays and holidays excluded even if used* ~~(weather permitting). Sundays and Holidays excepted~~ on the basis of the Bill of Lading weight *with time from 1700 hours Fridays or 1700 hours on days preceding a holiday to 0800 hours Mondays respectively 0800 hours on the next working day not to count even if used.*

(cc) DISCHARGE IN ALGERIA 2,500 FRIDAYS, SATURDAYS, HOLIDAYS, Not To Count thur17sun08amEX EIU

ALL RATES OF LOADING AND DISCHARGING ARE BASED PER WEATHER WORKING DAY OF 24 CONSEC HRS

if appropriate

(d) ~~Notwithstanding any custom of the port to the contrary, Saturdays shall not count as laytime at loading and discharging port or ports where stevedoring labor and/or grain handling facilities are unavailable on Saturdays or available only at overtime and/or premium rates.~~

~~In ports where only part of Saturdays is affected by such conditions, as described above, laytime shall count until the expiration of the last straight time period.~~

~~Where six or more hours of work are performed at normal rates, Saturday shall count as a full lay day.~~

(e) In the event that the vessel is waiting for loading or discharging berth, no laytime is to be deducted during such period for reasons of weather unless the vessel occupying the loading or discharging berth in question is actually prevented from working grain due to weather conditions in which case time so lost is not to count.

Demurrage/ Despatch

20. Demurrage at loading and/or discharging ports is to be paid at the rate of USD 8,750 per day or *pro rata* for part of a day and shall be paid by Charterers in respect of loading port(s) and by Charterers/~~Receivers~~* in respect of discharging port(s). Despatch money to be paid by Owners at half the demurrage rate for all

ORIGINAL

Money | *working* ~~lay~~time saved at loading and/or discharging ports.

Any time lost for which Charterers/Receivers are responsible, which is not excepted under this Charterparty, shall count as laytime, until same has expired, thence time on demurrage.

Shifting | 21. (a) Shifting expenses and time
*Charterers to load respectively discharge at one berth, if any other loading/discharging berths are used all other shifting expenses and time to be for account of Charterers.*

(i) ~~Cost of shifting between loading berths and cost of shifting between discharging berths, including bunker fuel used, to be for Owners'*/Charterers'/Receivers'* account, time counting.~~

(ii) ~~If vessel is required to shift from one loading or discharging berth to a lay berth or anchorage due to subsequent loading or discharging berth(s) not being available, all such shifting expenses, as defined above shall be for Owners'*/Charterers'/Receivers'* account, time counting.~~

(iii) If the vessel shifts from the anchorage or waiting place outside the port limits either directly to the first loading or discharging berth or to a lay berth or anchorage within the port limits the cost of that shifting shall be for Owners' account and time so used shall not count even if vessel is on demurrage *(being part of vessel's sea transit)*.

(iv) ~~Cost of shifting from lay berth or anchorage within the port limits to first loading or first discharging berth to be for Owners' account, time counting.~~

(b) Shifting in and out of the same berth
If vessel is required by Charterers/Receivers* to shift out of the loading berth or the discharging berth and back to the same berth, one berth shall be deemed to have been used, but shifting expenses from and back to the loading or discharging berth so incurred shall be for Charterers'/Receivers'* account and laytime or time on demurrage shall count.

(c) Overtime expenses for vessel's officers and crew shall always be for Owners' account.

Gear and Lights | 22. *This Clause shall not apply if vessel is gearless or chartered as such:* If required, the Master is to give free use of vessel's *cranes**/winches** and power to drive the* ~~cargo~~ gear, ~~including~~ runners, ropes and slings as on board. ~~, and power to operate the same.~~

~~Vessel's personnel is to operate the gear if permitted to do so by shore regulations, failing which shore operators are to be used.~~

~~Such shore operators are to be for Owners' account at loading port(s) if the provisions of Clause 10 (b) apply, otherwise~~ *Shore crane drivers*/winchmen if used to be* for Charterers' account at loading and Charterers'*/Receivers'* account at discharging port(s). *See also Grab Clause 64.*

Time lost on account of breakdowns of vessel's gear essential to the loading or discharging of this cargo is not to count as laytime or time on demurrage, and if *this Charter Party calls for Charterers/Receivers* to pay for cost of loading or discharging* ~~Clause 10 (a) applies~~ any stevedore standby time charges incurred thereby shall be for Owners' account *but up to maximum one shift.*

If required, Master shall give free use of the vessel's lighting as on board for night work.

Seaworthy Trim | 23. If ordered to be loaded or discharged at two or more ports, the vessel is to be left in seaworthy trim to Master's satisfaction (not exceeding the requirements of the Safety of Life at Sea Convention as applied in the country in which such ports are situated) for the passage between ports at Charterers' expense at loading and at Charterers'/Receivers'* expense at discharging ports, and time used for placing vessel in seaworthy trim shall count as laytime or time on demurrage.

Draft/ Lighterage | 24. ~~Owners warrant the vessel's deepest salt water draft shall not exceed ........................ feet ........................ inches on completion of loading and ........................ feet ........................ inches on arrival at first or sole discharging port.~~ ~~*Vessel's salt water arrival draft at discharging port not to exceed 33 feet.*~~

Should the vessel be ordered to discharge at a place in which there is not sufficient water for her to get the first tide after arrival without lightening, and lie always afloat, laytime is to count as per Clause 18 at a safe anchorage for similar vessels bound for such a place and any lighterage expenses incurred to enable her to reach the place of discharge is to be at the expense and risk of the cargo, any custom of the port or place to the contrary notwithstanding, but time occupied in proceeding from the anchorage to the discharging berth is not to count as laytime or time on demurrage.

Unless loading and/or discharging ports are named in this Charterparty, the responsibility for providing safe port of loading and/or discharging lies with the Charterers/Receivers* ~~provided Owners have complied with the maximum draft limitations in Lines 173/174.~~

**ar Decks, tc.** 25. ~~It is understood that if this vessel is fitted with car decks, container fittings and/or any other special fittings not connected with the carriage of grain in bulk, any extra expenses incurred in loading and/or discharging as a result of the presence of such car decks, container fittings and/or special fittings are to be for Owners' account. Time so lost shall not count as laytime or time on demurrage.~~

**ues and/or axes** 26. *See Clause 47.* ..............................................................................................

..............................................................................................

..............................................................................................

**away Tolls** 27. ~~All St. Lawrence Seaway and/or Welland Canal tolls on vessel and/or cargo assessed by Canadian and United States Authorities are to be paid and borne by Owners.~~

**Water Pollution** 28. *Owners warrant to have secured and to carry aboard the vessel a U.S. Federal Maritime Commission Certificate Financial responsiblity as required the U.S. water quality improvement Act of 1970. In addition Owners agree to comply with any and all official regulations pertaining to water pollution as applycable.* Any time lost on account of vessel's non-compliance with Government and/or State and/or Provincial regulations pertaining to water pollution shall not count as laytime or time on demurrage.

**gents** 29. ~~Owners*/Charterers* are to appoint agents at loading port(s) and Owners*/Charterers* are to appoint agents at discharging port(s)~~

*Agents at both ends to be selected by Charterers but appointed and paid for by Owners who paying usual fees but all tariffs should be in line with as per official tariffs.*

*Owners have right to appoint their protective agents (OPA) in any port/berth/anchorage to care of all Owners' interests and the protective agents (OPA) will have right to settle all Owners' disbursements covered by proforma disbursement accounts (including cargo attendance fee if any) provided without interfere any operation of Charterers, receivers, shippers and/or their representatives.*

*All cost and expenses to be for Owners' account.*

~~In all instances, agency fees shall be for Owners' account but are not to exceed customary applicable fees.~~

**trikes, toppages, tc.** 30. If the cargo cannot be loaded by reason of Riots, Civil Commotions or of a Strike or Lock-out of any class of workmen essential to the loading of the cargo, or by reason of obstructions or stoppages beyond the control of the Charterers caused by Riots, Civil Commotions or a Strike or Lock-out on the Railways or in the Docks or other loading places, or if the cargo cannot be discharged by reason of Riots, Civil Commotions, or of a Strike or Lock-out of any class of workmen essential to the discharge, the time for loading or discharging, as the case may be, shall not count during the continuance of such causes, provided that a Strike or Lock-out of Shippers' and/or Receivers' men shall not prevent demurrage accruing ~~if by the use of reasonable diligence they could have obtained other suitable labor at rates current before the Strike or Lock-out.~~ In case of any delay by reason of the before mentioned causes, no claim for damages or demurrage shall be made ~~by the Charterers/Receivers of the~~ cargo or Owners of the vessel. For the purpose, however, of settling despatch rebate accounts, any time lost by the vessel through any of the above causes shall be counted as time used in loading, or discharging, as the case may be.

**ce** 31. Loading Port

(a) If the Vessel cannot reach the loading port by reason of ice when she is ready to proceed from her last port, or at any time during the voyage, or on her arrival, or if frost sets in after her arrival, the Master - for fear of the Vessel being frozen in - is at liberty to leave without cargo; in such cases this Charterparty shall be null and void.

(b) If during loading, the Master, for fear of Vessel being frozen in, deems it advisable to leave, he has the liberty to do so with what cargo he has on board and to proceed to any other port with option of completing cargo for Owners' own account to any port or ports including the port of discharge. Any part cargo thus loaded under this Charterparty to be forwarded to destination at Vessel's expense against payment of the agreed freight, provided that no extra expenses be thereby caused to the Consignees, freight being paid on quantity delivered (in proportion if lump sum), all other conditions as per Charterparty.

(c) In case of more than one loading port, and if one or more of the ports are closed by ice, the Master or Owners to be at liberty either to load the part cargo at the open port and fill up elsewhere for the Owners' own account as under sub-clause (b) or to declare the Charterparty null and void unless the Charterers agree to load full cargo at the open port.

Voyage and Discharging Port

(d) Should ice prevent the Vessel from reaching the port of discharge, the Charterers/Receivers shall have the option of keeping the Vessel waiting until the re-opening of navigation and paying demurrage or of ordering the vessel to a safe and immediately accessible port where she can safely discharge without risk of detention by ice. Such orders to be given within 48 hours after the Owners or Master have given notice to the Charterers/Receivers of impossibility of reaching port of destination.





(e) If during discharging, the Master, for fear of Vessel being frozen in, deems it advisable to leave, he has liberty to do so with what cargo he has on board and to proceed to the nearest safe and accessible port. Such port to be nominated by Charterers/Receivers as soon as possible, but not later than 24 running hours, Sundays and holidays excluded, of receipt of Owners' request for nomination of a substitute discharging port, failing which the Master will himself choose such port.

(f) On delivery of the cargo at such port, all conditions of the Bill of Lading shall apply and the Owners shall receive the same freight as if the Vessel had discharged at the original port of destination, except that if the distance to the substitute port exceeds 100 nautical miles the freight on the cargo delivered at that port to be increased in proportion.

**Extra Insurance**

32. Any extra insurance on cargo incurred owing to ~~vessel's age, class, flag or ownership~~ to be for ~~Owners~~ Owners' account. ~~up to a maximum of ............................ and may be deducted from the freight, in Charterers' option. The Charterers shall furnish evidence of payment supporting such deduction.~~

**B. & I. Bunker Clause**

33. The vessel shall have the liberty as part of the contract voyage to proceed to any port or ports at which bunker oil is available for the purpose of bunkering at any stage of the voyage whatsoever and whether such ports are on or off the direct and/or customary route or routes, between any of the ports of loading or discharge named in this Charterparty and may there take oil bunkers in any quantity in the discretion of Owners even to the full capacity of bunker tanks and deep tanks and any other compartment in which oil can be carried whether such amount is or is not required for the chartered voyage.

**Deviation**

34. Any deviation in saving or attempting to save life or property at sea or any reasonable deviation shall not be deemed to be an infringement or breach of this Charterparty and the Owners shall not be liable for any loss or damage resulting therefrom; provided, however, that if the deviation is for the purpose of loading or unloading cargo or passengers it shall, *prima facie*, be regarded as unreasonable.

**Lien and Cesser Clause**

35. The Owners shall have a lien on the cargo for freight, deadfreight, demurrage, and average contribution due to them under this Charterparty.

Charterers' liability under this Charterparty is to cease on cargo being shipped except for payment of freight, deadfreight and demurrage at loading, and except for all other matters provided for in this Charterparty where the Charterers' responsibility is specified.

**Exceptions**

36. Owners shall be bound before and at the beginning of the voyage to exercise due diligence to make the vessel seaworthy and to have her properly manned, equipped and supplied and neither the vessel nor the Master or Owners shall be or shall be held liable for any loss of or damage or delay to the cargo for causes excepted by the U.S. Carriage of Goods by Sea Act, 1936 or the Canadian Carriage of Goods by Water Act, 1970, or any statutory re-enactment thereof.

And neither the vessel, her Master or Owners, nor the Charterers or Receivers shall, unless otherwise in this Charterparty expressly provided, be responsible for loss of or damage or delay to or failure to supply, load, discharge or deliver the cargo arising or resulting from: - Act of God, act of war, act of public enemies, pirates or assailing thieves; arrest or restraint of princes, rulers or people; seizure under legal process, provided bond is promptly furnished to release the vessel or cargo; floods; fires; blockades; riots; insurrections; Civil Commotions; earthquakes; explosions. No exception afforded the Charterers or Receivers under this clause shall relieve the Charterers or Receivers of or diminish their obligations for payment of any sums due to the Owners under provisions of this Charterparty.

**U.S.A. Clause Paramount**

37. If the vessel loads in the U.S.A. the U.S.A. Clause Paramount shall be incorporated in all Bills of Lading and shall read as follows:

"This Bill of Lading shall have effect subject to the provisions of the Carriage of Goods by Sea Act of the United States, approved April 16, 1936, or any statutory re-enactment thereof, which shall be deemed to be incorporated herein, and nothing herein contained shall be deemed a surrender by the carrier of any of its rights or immunities or an increase of any of its responsibilities or liabilities under said Act. If any term of this Bill of Lading be repugnant to said Act to any extent, such terms shall be void to that extent but no further."

**Canadian Clause Paramount**

38. *Deleted as N/A.* ~~If the vessel loads in Canada the Canadian Clause Paramount shall be incorporated in all Bills of Lading and shall read as follows:~~

~~"This Bill of Lading, so far as it relates to the carriage of goods by water, shall have effect, subject to the provisions of the Carriage of Goods by Water Act, 1970, Revised Statutes of Canada, Chapter C-15, enacted by the Parliament of the Dominion of Canada, or any statutory re-enactment thereof, which shall be deemed to be incorporated herein, and nothing herein contained shall be deemed a surrender by the carrier of any of its rights or immunities or an increase of any of its responsibilities or liabilities under the said Act. If any term of this Bill of Lading be repugnant to said Act to any extent, such term shall be void to that extent, but no further."~~

**Both-to-Blame Collision Clause**

39. If the liability for any collision in which the vessel is involved while performing this Charterparty falls to be determined in accordance with the laws of the United States of America, the following clause shall apply:

"If the vessel comes into collision with another vessel as a result of the negligence of the other vessel and any act, neglect or default of the master, mariner, pilot or the servants of the Carrier in the navigation or in the management of the vessel, the owners of the goods carried hereunder will indemnify the Carrier against all loss or liability to the other or non-carrying vessel or her owners in so far as such loss or liability represents loss of or damage to or any claim whatsoever of the owners of the said goods, paid or payable by the other or non-carrying vessel or her owners to the owners of the said goods and set off, recouped or recovered by the other or non-carrying vessel or her owners as part of their claim against the carrying vessel or Carrier."

The foregoing provisions shall also apply where the Owners, operators or those in charge of any vessel or vessels or objects other than, or in addition to, the colliding vessels or objects are at fault in

respect to a collision or contact."

The Charterers shall procure that all Bills of Lading issued under this Charterparty shall contain the same clause.

General Average/ New Jason

40. General Average shall be adjusted according to the York/Antwerp Rules ~~1974~~ *1994* and shall be settled *in London* ...............

Where the adjustment is made in accordance with the law and practice of the United States of America, the following clause shall apply:

"In the event of accident, danger, damage or disaster before or after commencement of the voyage, resulting from any cause whatsoever, whether due to negligence or not, for the consequences of which, the Carrier is not responsible, by Statute, contract or otherwise, the goods, shippers, consignees or owners of the goods shall contribute with the Carrier in general average to the payment of any sacrifices, losses or expenses of a general average nature that may be made or incurred and shall pay salvage and special charges incurred in respect of the goods.

If a salving vessel is owned or operated by the Carrier, salvage shall be paid for as fully as if the said salving vessel or vessels belonged to strangers. Such deposit as the Carrier or his agents may deem sufficient to cover the estimated contribution of the goods and any salvage and special charges thereon shall, if required, be made by the goods, shippers, consignees or owners of the goods to the Carrier before delivery."

The Charterers shall procure that all Bills of Lading issued under this Charterparty shall contain the same clause.

War risks

41. 1. The Master shall not be required or bound to sign Bills of Lading for any blockaded port or for any port which the Master or Owners in his or their discretion consider dangerous or impossible to enter or reach.

2. (A) If any port of loading or of discharge named in this Charterparty or to which the vessel may properly be ordered pursuant to the terms of the Bills of Lading be blockaded, or

(B) if owing to any war, hostilities, warlike operations, civil war, civil commotions, revolutions, or the operation of international law (a) entry to any such port of loading or of discharge or the loading or discharge of cargo at any such port be considered by the Master or Owners in his or their discretion dangerous or (b) it be considered by the Master or Owners in his or their discretion dangerous or impossible for the vessel to reach any such port of loading or of discharge - the Charterers shall have the right to order the cargo or such part of it as may be affected to be loaded or discharged at any other safe port of loading or of discharge within the range of loading or discharging ports respectively established under the provisions of the Charterparty (provided such other port is not blockaded or that entry thereto or loading or discharge of cargo thereat is not in the Master's or Owners' discretion dangerous or prohibited). If in respect of a port of discharge no orders be received from the Charterers within 48 hours after they or their agents have received from the Owners a request for the nomination of a substitute port, the Owners shall then be at liberty to discharge the cargo at any safe port which they or the Master may in their or his discretion decide on (whether within the range of discharging ports established under the provisions of the Charterparty or not) and such discharge shall be deemed to be due fulfilment of the contract or contracts of affreighment so far as cargo so discharged is concerned. In the event of the cargo being loaded or discharged at any such other port within the respective range of loading or discharging ports established under the provisions of the Charterparty, the Charterparty shall be read in respect of the freight and all other conditions whatsoever as if the voyage performed were that originally designated. In the event, however, that the vessel discharges the cargo at a port outside the range of discharging ports established under the provisions of the Charterparty, freight shall be paid as for the voyage originally designated and all extra expenses involved in reaching the actual port of discharge and/or discharging the cargo thereat shall be paid by the Charterers or Cargo Owners. In this latter event the Owners shall have a lien on the cargo for all such extra expenses.

3. ~~The vessel shall have liberty to comply with any directions or recommendations as to departure, arrival, routes, ports of call, stoppages, destinations, zones, waters, delivery or in any other wise whatsoever given by the government of the nation under whose flag the vessel sails or any other government or local authority including any de facto government or local authority or by any person or body acting or purporting to act as or with the authority of any such government or authority or by any committee or person having under the terms of the war risks insurance on the vessel the right to give any such directions or recommendations. If by reason of or in compliance with any such directions or recommendations, anything is done or is not done such shall not be deemed a deviation.~~

~~If by reason of or in compliance with any such directions or recommendations the vessel does not proceed to the port or ports of discharge originally designated or to which she may have been ordered pursuant to the terms of the Bills of Lading, the vessel may proceed to any safe port of discharge which the Master or Owners in his or their discretion may decide on and there discharge the cargo. Such discharge shall be deemed to be due fulfilment of the contract or contracts of affreighment and the Owners shall be entitled to freight as if discharge has been effected at the port or ports originally designated or to which the vessel may have been ordered pursuant to the terms of the Bills of Lading. All extra expenses involved in reaching and discharging the cargo at any such other port of discharge shall be paid by the Charterers and/or Cargo Owners and the Owners shall have a lien on the cargo for freight and all such expenses.~~

*Any extra war risk insurance on vessels Hull & Machinery due to route taken and/or ports called under this Charter Party to be for Owners' account.*

Address Commission

42. An address commission of 3.75 % on *full* gross freight, deadfreight, *deviation, detention* and demurrage is due to Charterers at time freight and/or demurrage *and/or deviation and/or detention* is paid, vessel lost or not lost, Charterers having the right to deduct such commission from payment of freight and/or demurrage *and/or deviation and/or detention.*



Brokerage Commission — 43. A brokerage commission of 2.5% total on gross freight, deadfreight and demurrage is payable by Owners to Bonum Marine Inc. (1.25%) and CABOT SHIPPING LTD (1.25%) *deductible from Charterers from freight and/or demurrage and/or deviation and/or detention*

IMMEDIATELY ON receiving freight payment and/or demurrage *and/or deviation and/or detention* payment(s), vessel lost or not lost.

Assignment — 44. Charterers have the privilege of transferring/assigning/reletting all or part of this Charterparty to others (guaranteeing to the Owners the due fulfilment of this Charterparty).

Arbitration (delete para (a) or (b) as appropriate) — 45. (a) ~~New York. All disputes arising out of this contract shall be arbitrated at New York in the following manner, and be subject to U.S. Law: One Arbitrator is to be appointed by each of the parties hereto and a third by the two so chosen. Their decision or that of any two of them shall be final, and for the purpose of enforcing any award, this agreement may be made a rule of the court. The Arbitrators shall be commercial men, conversant with shipping matters. Such Arbitration is to be conducted in accordance with the rules of the Society of Maritime Arbitrators Inc.~~

~~For disputes where the total amount claimed by either party does not exceed U.S.$ ........ ** the arbitration shall be conducted in accordance with the Shortened Arbitration Procedure of the Society of Maritime Arbitrators Inc.~~

~~(b) London. All disputes arising out of this contract shall be arbitrated at London and, unless the parties agree forthwith on a single Arbitrator, be referred to the final arbitrament of two Arbitrators carrying on business in London who shall be members of the Baltic Mercantile & Shipping Exchange and engaged in the Shipping and/or Grain Trades, one to be appointed by each of the parties, with power to such Arbitrators to appoint an Umpire. No award shall be questioned or invalidated on the ground that any of the Arbitrators is not qualified as above, unless objection to his action be taken before the award is made. Any dispute arising hereunder shall be governed by English Law.~~

*English law to apply. General Average and Arbitration in London as per LMAA clause with 12 months time bar including short claims procedure for claims un-exceeding USD 50.000,00*

~~For disputes where the total amount claimed by either party does not exceed U.S.$ ........ ** the arbitration shall be conducted in accordance with the Small Claims Procedure of the London Maritime Arbitrators Association.~~

*Clauses 45 through 68, inclusive as attached hereto, are each fully incorporated and made party of this Charter Party.*

*THE OWNERS* *THE CHARTERERS*

* Delete as appropriate.

**Where no figure is supplied in the blank space this provision only shall be void but the other provisions of this clause shall have full force and remain in effect.

This Charter Party is a computer generated copy of the NORTH AMERICAN GRAIN CHARTERPARTY form, printed by authority of the Association of Ship Brokers & Agents (U.S.A), Inc., using software which is the copyright of Strategic Software Ltd. Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the preprinted text of this document which is not clearly visible, the original approved document shall apply. The Association of Ship Brokers & Agents (USA), Inc and Strategic Software Ltd. assume no responsibility for any loss or damage caused as a result of discrepancies between the original approved document and this document.

Marinakis Chartering, Inc.
For & on behalf of Owners & in accordance with written authority received from Owners.
As Brokers only.

ORIGINAL

ORIGINAL

ADDITIONAL CLAUSES TO THE CHARTER PARTY OF THE M/V SEA MASTER DATED AT PIRAEUS 25th APRIL 2016

**Clause 45.**

A. No transshipment permitted
B. Tendering of Notice of Readiness, commencement of Laytime as per Clause 18.

**Clause 46. Stevedore Damage Clause**

Stevedores' damages, if any, to be settled directly between Owners and stevedores but Charterers to assist Owners at their utmost. Master to notify, if possible, these damages in writing latest 48 hours after occurrence to Stevedores but Owners to remain ultimately responsible to settle same with the stevedores.

**Clause 47.**

Any dues/taxes/levies on cargo to be for shippers/~~receivers~~' account. INCLUDING ANY INWARD FREIGHT COMMISSIONS/TAXES

Any dues/taxes/levies on vessel and or freight to be for Owners' account including customary port charges at both ends.

However in Brazil Brazilian Merchant Marine Renewal Tax, Quota da Provedencia, Contribuicao da Uniao, Inframar tax and Port utilisation tax to be for shippers' account.

**Clause 48. Fumigation Clause**

Charterers have the liberty to fumigate the cargo for their account on board the vessel either during loading, or after completion of loading or before or during discharge and actual time used to count as laytime as per charter party. Master/Owners not to clause Bills of Lading by reason of such fumigation. Crew to stay on board during fumigation provided local/ health regulations permit. Alternatively, if crew refuse to stay on board although local/health regulation permit, Owners to pay crew accommodation and expenses ashore and time lost due to this to be for Owners' account. Also Owners/master certify that the vessel is in all respects capable and agreeable to 'in transit fumigation' with aluminium phosphine/fostoxin or other approved product subject to checking same with Owners/master. Master to be fully advised of fumigation method employed and to confirm understanding of all safety precautions. In case of dispute, fumigation procedure and products to be ultimately only as per IMO regulations. Owners warrant that vessel is suitable for in sea transit fumigation as long as in transit fumigation procedure is performed and allowed as per IMO regulations and as long as products employed are as per IMO regulations.

**Clause 49.**

Vessel to comply with all requirements of us public law 85-742, part 9 (safety and health regulations for longshoring) and OSHA regulations. If longshoreman are not permitted to work due to failure of the master and/or Owners and/or Owners' agents to comply with the aforementioned regulations, any delay resulting there form shall be Owners' account and not to count as laytime.

**Clause 50. Vessel's description:**

MV SEA MASTER – IMO No. 9228411
All details about

Type: Grab Fitted – Single Deck Bulk Carrier
Flag. Greek
Built: 2001 IHI Tokyo Japan
DWT: 48,893 MT on 11.623 M - TPC 54.48
LOA/Beam/Depth 189.96 / 32.20 / 16.50 M
GT/NT 28019 / 16034
[illegible]
Grain/Bale [illegible] / [illegible] 381
Hatchcovers [illegible]
Gear [illegible]
Class [illegible]
P & I The American Club



ORIGINAL

ADDITIONAL CLAUSES TO THE CHARTER PARTY OF THE M/V
SEA MASTER DATED AT PIRAEUS 25th APRIL 2016

*...Continue from Clause 50*

Speed/Consumpt.: At Sea
Average service speed: ABT 13.00 Knots on ABT 28.00 T IFO Max 380 CST
Average Economic Speed. ABT 12 00 Knots on ABT 24.00 T IFO Max 380 CST
In Port
Idle: 2.7 T IFO
Working Gear: ABT 5.00 T IFO'

| Hold Grain No. Cubics | Bale Cubics | Hatch Dimensions | Hold XXXXX | Tank top Dim. Stgth |
|---|---|---|---|---|
| 1400118 | 389803 | 17 60 x 17 M | See | 20.31 T/SQM |
| 2451614 | 439244 | 20.00 x 17 M | Below | 14.19 |
| 3452073 | 438431 | 20.00 x 17 M | xxxxxxxxxx | 24.83 |
| 4465048 | 452554 | 20 00 x 17 M | xxxxxxxxxx | 14.19 |
| 5404875 | 393349 | 20.00 x 17 M | xxxxxxxxxx | 20.17 |

Owners warrant that vessel can be loaded and discharged simultaneously by minimum 4 gangs (provided same are being made available by Charterers) at all time with ship's own gears and that all of vessel's hatches can be served by at least one gear.

Below to be subject to master's approval to be lifted latest upon master providing stowage plan quote
"Owners warrant that vessel can be loaded and discharged simultaneously by minimum 5 gangs if at least 1 additional shore gear is used, and that all of vessel's hatches can be served by at least one gear."
Uquote

Vessel to be highest class at B.V. in any case a member of IACS without any outstanding class recommendation or condition imposed that may affect of this voyage and fully P&I covered with all current premia paid and is not subject to any known breach of club rules at "UK P&I club" a member of the international group of P&I club associations all during whole performance of the Charter party.

As required by Charterers, Owners have sent valid/updated class, P&I club, ISM (DOC+SMC), ISPS, cargo gears, H&M insurance, safety construction, loadline certificates.

ORIGINAL

**QUESTIONNAIRE**

1. NAME OF VESSEL : SEA MASTER
   OFFICIAL NUMBER : 12175

2. PREVIOUS NAMES : Star Sea Breeze
   DATE OF LAST CHANGE OF OWNERSHIP : July 2013

3. FLAG : Greek
   CALL SIGN: SVBT5
   SATCOM/TELEX/FAX/EMAIL : SEAMASTER@OM-EMAIL.NET

4. YEAR/MONTH OF BUILD : Japan 2001 - April
   YARD : IHI

5. DISPONENT/TC OWNERS :Not Applicable
   PERSON IN CHARGE :
   TEL : , FAX :
   TELEX :
   EMAIL :

6. VESSELS MANAGERS : Mega Shipping Line Corp.
5 Akti Moutsopoulou
Piraeus Greece
   PERSON IN CHARGE : Capt Evangelos Stavrakis
   TEL : (210) 429 3780
   FAX : ( 210) 429-2692
   TELEX : N/A

7. REGISTERED OWNERS : Sea Master Special Maritime Enterprise
   C/O Mega Shipping Line Corp.
   PERSON IN CHARGE : Capt. Evangelos Stavrakis
   TEL : same as Mega
   FAX : same as Mega
   TELEX :

8. WINTER/SUMMER DWAT . 47577 MT / 48893 MT
   CORRESPONDING DRAFTS 11.38 M / 11.62 M
   SERVICE SPEED LADEN . 13 Knots

9. GRT . 28019
   NRT : 16034
   TPC OR TPI AT SUMMER DRAFT : TPC 54.48

10. LOA : BEAM : 189.96 / 32.20 M
    HEIGHT WATERLINE TO TOP HATCHCOAMING IN NORMAL AND HEAVY BALLAST : 10.20 M / 12.50 M

11. VESSEL DE BALLASTING CAPACITY: (IN CBM/HOUR) 650 CBM / HR

12. CUBIC FEET GRAIN . CUBIC FEET BALE : 2173728 / 2113381

    CUBIC GRAIN AND BALE BREAKDOWN PER HOLD ·

| | GRAIN | BALE |
|---|---|---|
| No.1 | 400119 | 389803 |
| No.2 | [illegible] | [illegible] |
| No.3 | [illegible] | [illegible] |

ORIGINAL

No 4 - 465048 452554
No.5 - 404875 393349

13. NUMBER OF HOLDS : NUMBER OF HATCHES · 5 HO/HA
TYPE OF HATCHCOVERS : macgregor FOLDING TYPE.
DIMENSIONS OF HATCHCOVERS :
HATCH 1 - ABT 17.60 X 17.00 M
HATCH 2 - ABT 20.00 x 17.00 M
HATCH 3 - ABT 20.00 x 17.00 M
HATCH 4 - ABT 20.00 x 17.00 M
HATCH 5 - ABT 20.00 x 17.00 M

14. THE UNDERSIGNED CONFIRMS . confirm
THAT HOLDS/HATCHWAYS ARE FREE OF ANY OBSTRUCTIONS ·
THAT THERE ARE NO CENTERLINE BEAM OR BULKHEADS ·
THAT VESSEL IS SUITABLE FOR GRAB DISCHARGE -
THAT HOLDS ARE STEELFLOORED -
IF, ON ANY OF THE ABOVE POINTS,THE REPLY IS NEGATIVE : PLS ADVISE

15. GEAR TYPE/NUMBER/LOCATION : 4 cranes between holds ½ · 2/3 -- ¾ · 4/5
LIFTING CAPACITY : 30 MT
GRABS ON BOARD : YES/NO -- Yes
TYPE/SIZE/METHOD OF OPENING: ELECTRO HYDRAULIC

16. MAXIMUM DEPTH OF HOLDS: Reverting

17. LAST THREE CARGOES AND LAST THREE Charterers (LAST FIRST):

A - coal
B Gypsum
C Gypsum

18. PORT AGENTS AT LAST PORT : Not Applicable

19. CLASSIFICATION SOCIETY: Bureau Veritas

20. LAST SPECIAL SURVEY : Nov 2015
LAST INTERMEDIATE SURVEY :
LAST DRYDOCKING : Nov 2015

21. THE VESSEL, THE DISPONENT OWNERS/TC OWNERS, THE VESSEL'S MANAGERS AND THE REGISTERED OWNERS HAVE OBTAINED ISM CERTIFICATION : YES .

IF YES, RESPECTIVE DATES OF EACH CERTIFICATION : ISM expires 13/2/2019 / DOC expires 2/8/2017
VESSEL'S MANAGERS · Mega Shipping Line Corp.

22. THE UNDERSIGNED CONFIRM THE VESSEL HAS ITS VALID ISM CERTIFICATES ON BOARD IN ACCORDANCE WITH ARTICLE 9A OF DIRECTIVE 98/25/EC OF THE EUROPEAN COUNCIL:

As it appears on the relevant certificate
[illegible] the INTERNATIONAL CONVENTION FOR THE SAFETY OF LIFE AT SEA, 1974 as amended and of Regulation (EC) No 336/2006 on the implementation of the ISM Code within the Community

23. THE UNDERSIGNED CONFIRMS THE VESSEL HAS NOT SUFFERED ANY GENERAL AVERAGE IN THE PAST 3 YEARS :



ORIGINAL

24. THE UNDERSIGNED CONFIRMS THE VESSEL IS ABLE TO TRADE ALL PORTS/ COUNTRIES AS GIVEN IN THE CHARTERPARTY AND IS AWARE OF ALL LOCAL REGULATIONS/RESTRICTIONS :

25. THE UNDERSIGNED CONFIRM THE VESSEL IS ABLE TO TRADE WITHIN THE E.U.INTERNATIONAL WATERS AND IS NOT A BANNED SHIP FROM THE PARIS MOU

    INSPECTION DATABASE ACCORDING TO SECTION 3.9 OF THIS MOU: ABLE TO TRADE -

26. THE UNDERSIGNED CONFIRMS THERE ARE NO OUTSTANDING RECOMMENDATIONS OR CONDITIONS FROM CLASSIFICATION SOCIETY OR PORT STATE CONTROL :

27. If no to number 23 above, please specify

28. THE UNDERSIGNED CONFIRMS THAT THE VESSEL IS NOT BOUND FOR SCRAP AFTER THIS VOYAGE NOR SOLD DURING SAME NOR CHANGE OWNERSHIP :

29. NAME AND NATIONALITY OF THE MASTER : Yiannis Theodosiou Greek

30. NATIONALITY OF OFFICERS : Greek – Pilipino , NATIONALITY OF CREW : Pilipino

31. DO MASTER AND KEY OFFICERS SPEAK AND UNDERSTAND ENGLISH : Yes

32. NAME OF P AND I CLUB : The American Club
    VALIDITY DATE OF COVER : Feb 2017

33. HULL AND MACHINERY COVERAGE AMOUNT : 12 Million USD
    VALIDITY DATE OF COVER : Dec. 2016
    NAME OF INSURERS : Marsh USA

34. ISM AGREEMENT NUMBER : Pls see attached certificate
    CERTIFICATE NO. Pls see attached certificate

35. IS VESSEL/OWNER ISO CERTIFIED : checking reverting

36. IT IS HEREBY CONFIRMED THAT THE ABOVE INFORMATION/CONFIRMATION WILL BE VALID THROUGHOUT THE CHARTERPARTY PERIOD : SIGNATURE BY LEGAL ENTITY AS PER CHARTERPARTY

37. IF VESSEL SUBJECT TO ANY MORTGAGE AGREEMENT : NO
    IF 'YES' PLEASE CONFIRM THAT THE BANK RECEIVING FREIGHT PAYMENT THE MORTGAGEE ONI
    IF A DIFFERENT BANK IS BENEFICIARY,OWNERS TO PROVIDE CERTIFICATE FROM THE MORTGAGEE BANK STATING THAT THIS BANK HAS NO OBJECTION FRO THE FREIGHT TO BE PAID TO ANOTHER BANK OF OWNER S CHOICE

38. FULL BANKING DETAILS:

**JP Morgan Chase Bank NA**
**1 Chase Manhattan Plaza**
**New York, NY**
**10081**

Beneficiary: Marinakis Chartering, Inc., Agency Account



ORIGINAL

| | |
|---|---|
| Beneficiary Address: | 39 Broadway, Suite 1810 New York, NY 10006 |
| Account No.: | 232-1-403079 |
| SWIFT Code: | CHASUS33 |
| Routing No: | 021000021 |

39. PLACE: Piraeus          DATE : April 15, 2016          NAME :  Irene Stavrakis (President)
    SIGNATURE :

**THE OWNERS:**

ORIGINAL

ADDITIONAL CLAUSES TO THE CHARTER PARTY OF THE M/V SEA MASTER DATED AT PIRAEUS 25th APRIL 2016

*...Continue from Clause 50*

END QUESTIONNAIRE

Clause 51.
Owners guarantee that during the term of this charter party they will maintain in full force and effect all hull, machinery and P&I insurance.

Clause 52.
Owners must allow and extend the necessary facilities on board the vessel to independent surveyors and other designed representatives of cargo receivers for the purposes of supervising their interest.

Clause 53.
If applicable : Disponent Owners hereby unequivocally bind themselves to fulfill their obligations toward Charterers in accordance with this charter party's terms and conditions, i.e. fully separate from whatever terms and conditions have been concluded between the Disponent and actual Owners of the vessel.

Clause 54.
It is mutually agreed that the terms of this contract together with negotiations and exchanges to be kept strictly private and confidential and non reportable.

Clause 55.
Any separations other than natural, to be Charterers' time, risk, expense.

Clause 56.
Owners guarantee vessel is not prohibited for any reason whatsoever from entering and discharging at named port or ports of discharge as covered by this charter party.

Clause 57. Freight payment Clause

A. freight is deemed earned ~~after cargo taken on board and vessel's sailing from~~ on completion of loading port, discountless and non returnable, vessel and or cargo lost or not lost.

B. Freight payable 95 per cent of freight, less commission, brokerage ~~and estimated dispatch at load if any~~ within 3 banking days of signing/releasing "Clean on Board-freight payable as per Charter Party" Bills of Lading.

C. With regards to "Clean on Board" Bills of Lading, Master to reject unclean cargo that may involve clausing of Bills of Lading and Charterers/shippers to replace same with sound/clean one. In case Shippers dispute Master's decision, an independent surveyor to be mutually appointed by Owners/Charterers and his decision to be final and binding.

D. Charterers have the option to request Bills of Lading to be stamped "freight prepaid", in which case, same to be released immediately to Shippers upon receipt by Owners'



ORIGINAL

ADDITIONAL CLAUSES TO THE CHARTER PARTY OF THE M/V SEA MASTER DATED AT PIRAEUS 25th APRIL 2016

...*Continue from Clause 57*

office of Charterers' bankers' fax or swift evidence that 95 per cent of freight (less deductions as agreed above) has been irrevocably remitted.

E. Balance of freight together with demurrage/despatch, as the case may be, to be settled after receipt of Owners' final freight account together with supporting documents (Notice of Readiness, Statement of Facts, Owners' time sheets) but latest 35 days after completion of discharge and receipt of relevant documents.

F. Charterers will not agree the assignment of freight monies due under this Charter Party, or the Charter Party itself, in any circumstances whatsoever.

Master to authorize Agents to sign the Bills of Lading on his behalf in strict conformity with Mates' and Tally Clerk's receipts.

Bank charges in Owners' bank to be for Owners' account.

Clause 58.
Charter party terms shall always supersede Bills of Lading terms. Wherever contradictory, typewritten clauses or amendments shall principally overrule the printed of the Norgrain charter party.

Clause 59. **Bimco standard ISM clause for voyage and time charterparties**
From the date of coming into force of the international safety management (ISM) code in relation to the vessel and thereafter during the currency of this charter party, the Owners shall procure that both the vessel and "the company" (as defined by the ISM code) shall comply with the requirements of the ism code. Upon request the Owners shall provide a copy of the relevant document of compliance (DOC) and safety management certificate (SMC) to the Charterers. Except as otherwise provided in this charter party, loss, damage, expense or delay caused by failure on the part of the Owners or "the company" to comply with the ISM code shall be for the Owners' account.

Clause 60. **ISPS/MTSA clause for voyage charter parties 2005**
(a)(I) The Owners shall comply with the requirements of the International Code for the Security of Ships and of Port Facilities and the relevant amendments to Chapter XI of SOLAS (ISPS Code) relating to the Vessel and "the Company" (as defined by the ISPS Code). If trading to or from the United States or passing through United States waters, the Owners shall also comply with the requirements of the US Maritime Transportation Security Act 2002 (MTSA) relating to the Vessel and the "Owner" (as defined by the MTSA).

(II) Upon request the Owners shall provide the Charterers with a copy of the relevant International Ship Security Certificate (or the Interim International Ship Security Certificate) and the full style contact details of the Company Security Officer (CSO).

(III) Loss, damages, expense or delay (excluding consequential loss, damages, expense or delay) caused by failure on the part of the Owners or "the Company"/"Owner" to comply with the requirements of the ISPS Code/MTSA or this Clause shall be for the Owners' account, except as otherwise provided in this Charter Party.

(b)(i) The Charterers shall provide the Owners and the Master with their full style contact



ORIGINAL

ADDITIONAL CLAUSES TO THE CHARTER PARTY OF THE M/V SEA MASTER DATED AT PIRAEUS 25th APRIL 2016

*...Continue from Clause 60*

details and, upon request, any other information the Owners require to comply with the ISPS Code/MTSA.

(u) Loss, damages or expense (excluding consequential loss, damages or expense) caused by failure on the part of the Charterers to comply with this Clause shall be for the Charterers' account, except as otherwise provided in this Charter Party, and any delay caused by such failure shall count as laytime or time on demurrage.

(c) Provided that the delay is not caused by the Owners' failure to comply with their obligations under the ISPS Code/MTSA, the following shall apply:

(1) Notwithstanding anything to the contrary provided in this Charter Party, the Vessel shall be entitled to tender Notice of Readiness even if not cleared due to applicable security regulations or measures imposed by a port facility or any relevant authority under the ISPS Code/MTSA.

(II) Any delay resulting from measures imposed by a port facility or by any relevant authority under the ISPS Code/MTSA shall count as laytime or time on demurrage, unless such measures result solely from the negligence of the Owners, Master or crew or the previous trading of the Vessel, the nationality of the crew or the identity of the Owners' managers.

(d) Notwithstanding anything to the contrary provided in this Charter Party, any costs or expenses whatsoever solely arising out of or related to security regulations or measures required by the port facility or any relevant authority in accordance with the ISPS Code/MTSA including, but not limited to, security guards, launch services, vessel escorts, security fees or taxes and inspections, shall be for the Charterers' account, unless such costs or expenses result solely from the negligence of the Owners, Master or crew or the previous trading of the Vessel, the nationality of the crew or the identity of the Owners' managers. All measures required by the Owners to comply with the Ship Security Plan shall be for the Owners' account.

(e) If either party makes any payment which is for the other party's account according to this Clause, the other party shall indemnify the paying party.

Clause 61.

Cargo quantity on Bills of Lading to be determined as per custom of the port only at both ends. Owners' option to have P&I surveyor/representative at discharging port throughout discharge. Same to be for Owners' account.

Clause 62.

English Law to apply. General Average and arbitration London as per LMAA Clause with 12 months time bar including short claims procedure for claims un-exceeding USD 50.000,00.

Clause 63. Pre stowage plan Clause

SF /



ORIGINAL

ADDITIONAL CLAUSES TO THE CHARTER PARTY OF THE M/V SEA MASTER DATED AT PIRAEUS 25th APRIL 2016

*...Continue from Clause 63*

**Clause 64. Grab Clause**

Vessel has no grabs on board and Owners to give free hook for grab installation and Charterers to arrange grabs in line with vessel's physical description and same to be shore / remote controlled.

All grab arrangement operations time and expenses to be for Charterers' account.

**Clause 65. Original Bills of Lading not available at discharge Clause**

Should no original Bill(s) of Lading be available at discharging port(s), or in Consignees'/Receivers' hands and if required by Charterers, Owners agree to discharge cargo against a Letter of Indemnity which to be firstly e-mailed and then supported by Charterers' formal Letter of Indemnity as per usual Owners' P&I Club wording, without a bank guarantee being required.

This Letter of Indemnity shall automatically become null and void against presentation of one out of three originals Bills of Lading duly accomplished.

Cargo Receivers as stated in the Bills of Lading to countersign the Letter of Indemnity.

The Letter of Indemnity wording also should be faxed to the Owners and the Letter of Indemnity should be signed by authorized person of Charterers.

**Clause 66. Clean on board Bills of Lading Clause**

Vessel to only load cargo for which Clean on Board Bills of Lading to be issued as required by Charterers. If Master takes exception against cargo presented, he must notify promptly Shippers in order that they may provide alternative replacement of cargo that would allow the issuance of "Clean on Board" Bills of Lading.

Clean Mate's Receipts to be signed for each parcel of cargo when on board, and Master to sign Bills of Lading in accordance therewith as presented by Charterers or Shippers or agents.

Master to reject any unsound/damaged cargo that would involve the clausing of Mate's Receipts and/or Bills of Lading which to be replaced by sound cargo at Charterers'/shippers' time and expenses.

In case of dispute a mutually agreed surveyor to be appointed who shall decide about cargo condition and whose advice shall bind both Owners and Charterers with party who is wrong bearing time and cost.

**Clause 67.**

Congen Bills of Lading to be used.

All bills of ladings should be strict in conformity with Mates' receipts.

Charterers guarantee no liner / through Bills of Lading shall be issued for the cargoes carried under this Charter Party.

~~**Clause 68. USEC option discharge Clause**~~

~~Charterers' option to discharge at one port USEC (US East Coast) out of Norfolk (Virginia) or in Charterers' option Brunswik (Georgia) or in Charterers' option Morehead City (North Carolina) or in Charterers' option Wilmington (North Carolina) or in Charterers' option Savannah (Georgia) when 38 feet salt water arrival draft except Savannah 35 feet salt water arrival draft.~~

Ports being named Owners to check same with intended below agents

ORIGINAL

CLEAN FIXTURE RECAP

MV SEA MASTER

CP DATED 25th APRIL 2016

1.- M/V SEA MASTER - as described per attached

2.- NEGO + FIXTURE TO BE KEPT STRICTLY PRIVATE AND CONFIDENTIAL

3.- OWNERS GUARANTEE THAT VESSELS HOLDS ARE FULLY SUITABLE IN ALL RESPECTS WITH NO OBSTRACTIONS IN HOLDS FOR LOADING GRAINS AND FOR GRAB DISCHARGE.

VESSEL GEARED.

IF VSL FAILS INSPECTION BY LOCAL AUTHORITIES THEN time to stop counting from the time the vessel failed inspection until vessel passes such inspection

4.- OWNERS GUARANTEE THAT VESSEL HAS NOT LOADED FISHMEAL OR ANY OTHER CARGO HARMFUL TO GRAINS WITHIN THE LAST 3 (THREE VOYAGES).

LAST 4 CARGOES STATING LAST FIRST: Coal / gypsum / gypsum / Clinker

5.- OWNERS GUARANTEE THAT VESSEL IS FULLY P AND I COVERED AND WILL REMAIN COVERED BY THE SAME CLUB FOR THE DURATION OF THE CHARTER OWNERS GUARANTEE THAT ALL VESSELS CERTIFICATES ARE UP TODATE AND WILL REMAIN VALID FOR THE DURATION OF THE CHARTER.

6.- OWNERS GUARANTEE THAT VESSEL IS FULLY CLASSED BY A FIRST CLASS CLASSIFICATION SOCIETY AND WILL REMAIN FULLY IN CLASS WITH THE SAME SOCIETY FOR THE DURATION OF THE CHARTER.

7.-OWNERS GUARANTEE THAT VESSEL GEAR IS IN FULL WORKING ORDER SERVING EACH HATCH

8.- n/a

9.- OWNERS GUARANTEE THAT ALL VESSELS CREW MEMBERS VACCINATION CARDS/CERTIFCATES ARE



ORIGINAL

UP TO DATE AND VALID. ANY TIME LOST AT LOAD/DISPORTS DUE TO ANY DEFICIENCY NOT TO COUNT

AS LAYTIME AND ANY ADDITIONAL COSTS INCURRED,DUE TO ANY DEFICIENCY TO BE FOR OWNERS

ACCOUNT.

10.- OWNERS GUARANTEE THE VESSEL IS FULLY 'ISPS' + 'ISM' + 'IMO' COMPLIANT, OWNERS TO SUPPLY

COPY OF 'ISPS' CERTIFICATE PRIOR CHARTERERS LIFTING 'SUBS'.

11.- ACCT: AGRIBUSINESS UNITED DMCC

Saba 1 Tower. Suite 2203 Floor 22

JLT Plot E3, Dubai Po Box 41011, UAE

12.- CARGO:

AGRIS COMMODITY NON HARMFUL NON IMO

1 Hold abt  6/7,000mts of Soybean Meal SF 55 WOG

+

1 hold abt 6/7,000mts of Soyahull Pellets SHP  SF 60 WOG

+

CORN SF 46 WOG 25,000Mts 10%

PLS SEND VSL'S FULL DESCR - PLS KINDLY ASK MASTER TO PPRE STOWAGE PLAN In case on uncertainty

about stowage factor, same is to be determined by GAFTA approved laboratory.

13.- CHARTERERS OPTION TO LOAD UP TO FULL AND COMPLETE CARGO, GRAIN/SPACE PERMITTING

14.- LOADING: ONE OR TWO ARGENTINA UPRIVER PORT(S) NOT ABOVE TIMBUES OWNS TO SATISFY

THEMSELVES WITH PORT RESTRICTIONS

15.  DISCHARGING PORTS: CHOPT 1 OR 2 OR 3 SP : (CASABLANCA/JORF

LASFAR) AND/OR AGADIR 

ORIGINAL

OPTION 3 DISPORTS CASABLANCA/JORF AND AGADIR AND 1 SP CASA/ORAN RANGE (INCL ORAN) OWNS

TO SATISFY THEMSELVES WITH PORT RESTRICTIONS


16.- LAYCAN: 24/29 APRIL 2016


17.- DISCHARGING PORT NOTICES, VESSEL TO GIVE 4 AND 2 DAYS ETA VESSELS ARRIVAL DISPORT


18.- LOAD RATE:

UPRIVER ARGENTINA 7000 PWWD

SATURDAYS (AFTER NOON), SUNDAYS, HOLIDAYS, Not To Count,

SATNOONMon8ex EIU


19.- DISCHARGE RATES:

MOROCCO 5,000

SATURDAYS, SUNDAYS, HOLIDAYS, Not To Count, Fri17Mon8ex EIU

ALGERIA 2,500

FRIDAYS, SATURDAYS, HOLIDAYS, Not To Count thur17sun08amEX EIU


20.- ALL RATES OF LOADING AND DISCHARGING ARE BASED PER WEATHER

WORKING DAY OF 24 CONSEC HRS


21.- LAYTIME TO COMMENCE AT ALL PORTS (LOADPORTS AND DISPORTS)

NEXT WD AT 8AM.

TIME NOT REVERSIBLE. FRESH NOR TO BE TENDERED AT ALL PORTS

BENDS AND NOR WILL BE ACCEPTED ONLY UPON VSL PASSING LOCAL

AUTHORITIES INSPECTIONS



ORIGINAL

22.- FREIGHT RATE (ALL GEO ROTATION):

OPTION A: US$24. 75 PMT bss 1/2: AGADIR + CASA or JORF

OPTION B: US$26.25 PMT bss 2/2: AGADIR + CASA or JORF

OPTION C:

US$28.25 PMT bss 2/3: AGADIR + CASA/JORF + 1 SP CASA/ORAN RANGE

Algerian qtty 17,500 10% FOR OPTION C

23.- DEMURRAGE USD 8,750 pdpr/HALF DESPATCH
WORKING TIME SAVED BOTH ENDS DEMMURRAGE/DISPATCH IF ANY
TO BE SETTLED 35 DAYS AFTER SUBMISSION OF DOCUMENTATION
AND OWNS/CHRTRS INVOICE

24.- FREIGHT WILL BE PAID 95% LESS COMM WITHIN 3 BD AFTER
SIGNING RELEASING OF BLS MARKED "FREIGHT PAYABLE AS PER CP"
IF B/LS MARKED "PREPAID" THE ORIGINALS CAN BE RELEASED UPON
OWNERS RECEIVED IRREVOCABLE BANKING SWIFT OF THE FRT PAYMENT.

25.- EXINS DUE TO FLAG on OWNS' ACCT

26.- ALL EXTRA WAR RISK INSURANCE ON VESSEL OWNERS ACCT

27.- TAXES CLAUSE ALL PORTS TAXES AND/OR DUES ON VESSEL AND/OR
FREIGHT, INCLUDING ANY INWARD FREIGHT COMMISSIONS/TAXES, OWNERS
ACCT.



ORIGINAL

TAXES AND/OR DUES ON CARGO SHIPPERS /RECEIVERS ACCT .

28.- FULL PORT D/A COSTS ALL PORTS BENDS INCLUDING AGENCY FEES ON OWNS ACCT - CHABE - AGENTS NOMINATED BY CHTS PROVIDED COMPETITIVE

29.- ANY NORMAL OWNERS/CREW MATTERS (SUCH AS MEDICAL/REPATRIATION/PROVISIONS/WATER/CASH TO MASTER/REPAIRES/BUNKERS/SECURITY CHARGES, FEES/ALL HUSBANDERY ITEMS ETC) WHICH TO BE FULLY FOR OWNERS ACCOUNT AND COVERED BY OWNERS.OWNERS EXPENSES SHALL BE SETTLED BY THEM DIRECTLY WITH VESSELS AGENTS AND PRIOR TO COMPLETION OF DISCHARGE.ANY ADDITIONAL PORT EXPENSES, INCLUDING BERTHAGE AND ANCHORAGE, WHICH DIRECTLY RESULT FROM BREAKDOWN OR DEFECT OF VESSEL OR CARGO CLAIMS OR VESSEL/OWNERS NOT SETTLING THEIR BILLS/ACCOUNTS WITH AGENTS, SHALL BE FOR OWNERS ACCOUNT AND TO BE SETTLED DIRECTLY BY OWNERS WITH THE VESSELS AGENT

30.- IN THE EVENT THAT THE VESSEL IS INSPECTED BY PORT STATE CONTROL (PSC) AT LOAD PORTS(S) AND/OR DISCHARGE PORT(S) AND DEFECTS REPORTED, OWNERS TO PROVIDE WRITTEN UNDERTAKING TO CHARTERERS TO CONFIRM THAT ALL DEFECTS WILL BE CORRECTED IN ACCORDANCE WITH PSC REQUIREMENTS. SHOULD THE VESSEL BE DETAINED BY PSC BEFORE CARGO OPERATIONS HAVE BEEN COMPLETED, TIME OF SUCH DETENTION NOT TO COUNT AS LAYTIME OR TIME ON DEMURRAGEprovided vessel is prevented from working cargo unaffected. SUBJECT TO NATURE OR SEVERITY OF ANY DEFECTS FOUND BY PSC, CHARTERERS



ORIGINAL

RESERVE THE RIGHT TO CEASE CARGO OPERATIONS PENDING COMPLETION OF WORK AND PSC CLEARANCE.

31.- IN THE EVENT THAT ORIGINAL BILLS OF LADING ARE NOT AVAILABLE AT DISCHARGE IN TIME FOR VESSELS ARRIVAL AT DISCHARGE PORT,OWNERS AGREE TO DISCHARGE, DELIVER AND RELEASE THE CARGO TO NOMINATED RECEIVERS AGAINST CHARTERERS LETTER OF INDEMNITY WORDING AS PER OWNERS P AND I CLUB.

32. TO FACILITATE DOCUMENTATION, OWNS TO AUTHORIZE AGENTS OR CHTRS OR DESIGNATED CHTS' BANK OR THIRD PARTY DESIGNATED BY CHTS TO ISSUE ORIG BSL (IN WHICH CASE ONLY M/R TO BE SIGNED AT LOADPORT). ORIG BSL TO BE SIGNED/RELEASED IN ACCORDANCE WITH FRT PAYMENT CLAUSE, OWNS ALWAYS TO BE COPIED AND APPROVE SAME.
CHARTERERS HV THE OPTION TO SWITCH/SPLIT LOAD PORT B/LS IN DUBAI (UAE) OR GENEVA OR MOROCCO AT OWNERS AGENT OFFICE AT CHTRS COST AGAINST CHRS SINGLE LOI IN OWRS PNI CLUB WORDING. Said presedure to take place only after the original set of bills of lading have been returned to the Owners at their office in New York or Piraeus.THE ORIG LOI AND THE 1ST SET ORIG B/LS TO BE SURRENDERED TO OWNERS AGENT BEFORE ISSUANCE AND RELEASING OF 2ND SET B/LS.
THE SIGNED LOI AND THE DRAFT COPIES OF 2ND SET B/LS TO BE PRE-APPROVED BY OWNERS.

33. OWNERS CONFIRM VESSEL AND/OR OWNERS AND/OR MANAGERS AND/OR



ORIGINAL

ANY INDIVIDUAL ARE NOT IRANIAN AND DO NOT HAVE ANY IRANIAN INTERESTS, FURTHERMORE OWNERS CONFIRM VESSEL IS NOT OWNED

AND/OR MANAGED AND/OR ANY INDIVIDUAL ARE NOT SYRIAN AND DO NOT HAVE ANY SYRIAN INTERESTS AND ARE NOT IN ANYWAY ASSOCIATED WITH SYRIAN/IRANIAN GOVERNMENT AND/OR GOVERNMENT AGENCY. OWNERS CONFIRM VESSEL IS NOT BLACKLISTED IN ANY WAY AND DOES NOT APPEAR ON OFAC LIST AND/ OR ANY BOYCOTT LIST WORLDWIDE.

34.- CGO QTTIES ON THE Bs/L WILL BE ASCERTAINED WITH SHORE MEANS (CUSTOM OF THE PORT) AND WILL BE BINDING FOR ALL PURPOSES

35.- Vessel to only load cargo for which Clean on Board Bills of Lading and Mate's Receipts to be issued as required by Charterers, If Master takes exception against cargo presented, he must notify promptly Shippers in order that they may provide alternative replacement of cargo that would allow the issuance of "Clean on Board" Bills of Lading. Clean Mate's Receipts to be signed for each parcel of cargo when on board, and Master to sign Bills of Lading in accordance therewith as presented by Charterers or Shippers or agents. Master to reject any unsound/damaged cargo that would involve the clausing of Mate's Receipts and/or Bills of Lading which to be replaced by sound cargo at Charterers'/Shippers' time and expenses.

In case of dispute a mutually agreed surveyor to be appointed who shall decide about cargo condition and whose advice shall bind both Owners and Charterers with party who is wrong bearing

ORIGINAL

time and costs.

35b.- ALL SUBS ARE LIFTED AND VSL IS CLEAN FIXED WITH CP DATED PIRAEUS 25th APRIL 2016

.

35c.- In case vessel is arrested then owners to bear all direct consequences of same

36.- OWISE AS PER EXECUTED CP OF MV SEA HONEST AND BLW CP DTLS AS AGREED

36A.- London arbitration / English law to apply in this trade / subsequent fixture.

37.- 3.75% ADD + 1.25% TO BONUM MARINE + 1.25% COMM TO CABOT SHIPPING LTD., LONDON PAYABLE BY OWNERS TO BROKERS ON F/D/D IMMEDIATELY ON RECEIPT OUT OF THE RESPECTIVE F/D/D BY THE OWNERS.

END MAIN TERMS

ORIGINAL

Marinakis Chartering, Inc.

---

| | |
|---|---|
| From: | Bonum Marine <chartering@bonum-marine.gr> |
| Sent: | Thursday, September 01, 2016 8:55 AM |
| To: | Marinakis Chartering Inc - Markos Marinakis; info@megashipping.gr |
| Subject: | RE:RE:FW:RE:FW: RE:re mv sea master - agribusiness (REF:160X5BN00) (REF:160X8UI00) (REF:160X8PP00) (REF:160XCKZ00) (REF:160XUA00) (REF:160XIMB00) |
| Importance: | High |

TELiX MSG: 0XIMB-00 01/09/16 15:54

www.bonum-marine.gr

DEAR SIRS.

THANKS FOR YOUR E-MAIL. COULD WE PLEASE ASK YOU TO TAKE NOTE OF OUR BELOW POINTSPURSUANT TO AN AGREEMENT BEING REACHED ON THIS
OUR SUGGESTION IS AS FOLLOWS

OWNERS' SIDE
- OWNERS AGREE CHARTERERS' OPTION TO DISCHARGE ORAN GHAZAOUET IS RE-INSTATED AT THE INITIAL CONDITIONS OF OPTION 1-3 ORAN
- OWNERS WILL NOT ASK FOR ANY DETENTION WHILE WAITING FOR ALGERIAN SALE TO BE DECLARED
- CHARTERERS MAY STILL USE THE DECLARED OPTION OF 1-2 AND UNLOAD 7000 SOY BEAN MEAL IN MOROCCO CASABLANCA

OUR CHARTERERS' SIDE
- COLLECTED CARGILL DEMURRAGE MONIES WILL BE PAID TO OWNERS **AS SOON AS AGREEMENT IS REACHED** USD 274,735.36
- BALANCE TO BE SHOULDERED BEFORE VESSEL DISCHRGE IN ALGERIA USD140,515.63 PLUS USD53,414.00
- TIME FOR PAYMENT OF DISCHARGE PORTS DEMURRAGE WILL BE SHORTENED TO 7 DAYS

ORIGINAL

*ALL OTHER TERMS OF THE C/P TO GOVERN AND REMAIN IN FORCE .*

*UPON AGREEMENT AND ACCEPTANCE OF ABOVE BY BOTH PARTIES, WE WILL ABIDE BY THE NEW AGREEMENT.*

*ON WITHOUT PREJUDICE BASIS, WE COMMUNICATE BELOW .*
*A- CARGILL PAID 274,735.36 USD ONLY*
*B- PHYTO FOR ALGERIA SHOULD BE ISSUED TODAY AS PER SENASA*
*C - TIME FRAME TO COLLECT DEMURRAGE FROM FINAL BUYERS IN MOROCCO IS 4 WEEKS FROM COMPLETION AT THE PORT.*

Bonum Marine Inc. · Piraeus · Phone : +30 210 41 31 144 / +30 210 41 74 131
skype: bonum marine.inc · msn: bonum marine@hotmail.com
mobile : +30 693 73 999 89 / bbm pin:7b50f5b9

----- Original Message -----

TELEX: CONEA-00 0109 1535 KMK

From "Bonum Marine" chartering@bonum-marine.gr
To mkm@marinachart.com,markos@marinachart.com,info@megashipping.gr;
Sent Thu, 1 Sep 2016 15:35:15 +0300
Subj: RE:FW RE:FW RE re mv sea master - agribusiness (REF:160N5BN00) (REF:160N8U100) (REF:160NBPP00) (REF:160NCKZ00) (REF:160NIJA00)
Mr Markos Marinakis + Capt Vaggelis George

re mv sea master

hello blw just rcvd

qte
DEAR SIRS,

THANKS FOR YOUR E-MAIL. COULD WE PLEASE ASK YOU TO TAKE NOTE OF OUR BELOW POINTS PURSUANT TO AN AGREEMENT BEING REACHED ON THIS OUR SUGGESTION IS AS FOLLOWS

OWNERS SIDE
OWNERS AGREE CHARTERERS' OPTION TO DISCHARGE ORAN GHAZAOUET

ORIGINAL

IS RE-INSTATED AT THE INITIAL CONDITIONS OF OPTION 1/3 ORAN
- OWNERS WILL NOT ASK FOR ANY DETENTION WHILE WAITING FOR ALGERIAN SALE TO BE DECLARED
- CHARTERERS MAY STILL USE THE DECLARED OPTION OF 1/2 AND UNLOAD 7000 SOY BEAN MEAL IN MOROCCO CASABLANCA

OUR CHARTERERS' SIDE :
- COLLECTED CARGILL DEMURRAGE MONIES WILL BE PAID TO OWNERS AS SOON AS POSSIBLE AFTER RECEIPT OF OWNERS REPLY AND AGREEMENT REACHED : USD 274,735.36
- BALANCE TO BE SHOULDERED BEFORE VESSEL DISCHRGE IN ALGERIA : USD140,515.63 PLUS USD53,414.00
- TIME FOR PAYMENT OF DISCHARGE PORTS'DEMURRAGE WILL BE SHORTENED TO 15 DAYS.

ALL OTHER TERMS OF THE C P TO GOVERN AND REMAIN IN FORCE.

UPON AGREEMENT AND ACCEPTANCE OF ABOVE BY BOTH PARTIES, WE WILL ABIDE BY THE NEW AGREEMENT.

ON WITHOUT PREJUDICE BASIS, WE COMMUNICATE BELOW :
A- CARGILL PAID 274,735.36 USD ONLY
B- PHYTO FOR ALGERIA SHOULD BE ISSUED TODAY AS PER SENASA
C- TIME FRAME TO COLLECT DEMURRAGE FROM FINAL BUYERS IN MOROCCO IS 4 WEEKS FROM COMPLETION AT THE PORT.
-unqte-
thx n brgrds

----- Original Message End -----

Bonum Marine Inc. - Piraeus - Phone :+30 210 4131144 / +30 210 4174131
Fax: +30 211 85 05 517
skype: bonum.marine.inc - msn: bonum-marine@hotmail.com

chartering@bonum-marine.gr
positions@bonum-marine.gr
ops@bonum-marine.gr
info@bonum-marine.gr

Marinakis Chartering, Inc.
For & on behalf of Owners & in accordance with written authority received from Owners.
As Brokers only.

[signature]

ORIGINAL

SEA MASTER

Addendum to varied charter party dated 25 April 2016 (the Charter party )
And agreement dated September 1 2016
Dated: November 7 2016

BETWEEN

SEA MASTER SPECIAL MARITIME ENTERPRISE ("Owners")
C/O MEGA SHIPPING LINE CORP

and

AGRIBUSINESS UNITED DMCC ("Charterers")

For valuable consideration the sufficiency which the parties acknowledge the Charter party terms as they stand at the date of this addendum shall be varied as follows

1. Charterers shall advise Owners as soon as reasonably practicable whether the sale of all of the cargo of 7,000 metric tonnes of soya bean meal (the Cargo) remaining on the MV Sea Master is to be sold to a buyer who has at present contracted for the purchase of the Cargo and its discharge and delivery in the Lebanon

2. In the event that the sale referred to at 1 above will take place then the following further terms shall apply

   (a) The destination for the voyage shall be Beirut or Tripoli in charterers option to be declared 2 days before vessel ETA at Lebanon The current bill(s) of lading covering the Cargo shall be surrendered to Owners' representatives at Charterers bank in Zurich Switzerland and upon the surrender the current bill(s) of lading shall be substituted for a single bill of lading for the Cargo for discharge and delivery in the Lebanon such single bill of lading to be marked freight payable as per charter party"

   (b) Owners shall as soon as reasonably practicable, advise Charterers of their representative in Zurich otherwise the switch shall be effected by Omnitracia Limited (Dubai) Charterers to confirm that all the formalities including confirmation by the bank that is ready for the bill of lading exchange

   (c) Charterers shall, within three days of the release of the bill of lading for shipment of the cargo to Lebanon referred to at 2 (a) above, pay to Owners, irrevocably, a lump sum amount of USD$300,000 to be applied to freight properly outstanding for the voyage from Casablanca to Oran and further to freight from Oran to the Lebanese discharge port (for the avoidance of doubt in the sum of US$140,000) with the balance being applied to the demurrage account

   (d) Charterers shall provide an original Promissory Note in the sum of USD$ 200,000 to be paid at the completion of a [illegible] day period after the final discharge of all of the Cargo The original of the said Promissory Note shall be held in escrow by Charterers

ORIGINAL

solicitors in London and to be released to Owners or their authorised representatives after the expiry of the 15 day period post final and complete discharge

(e) Charterers shall have three days FHEX laytime at the discharge port in Lebanon

(f) The cargo shall be discharged against the production of a Letter of Indemnity as per the Charter party terms and production of an original bill of lading shall not therefore be required to effect discharge of the Cargo

(g) The Vessel will commence its voyage to Lebanon upon receipt of cleared funds in the sum of USD$300 000 as per 2 (c) above

3 Save for the above, all of the currently existing terms of the Charter party dated April 25, 2016 and Agreement dated September 1, 2016 as at the date of this addendum shall remain in force.

SIGNED

Markos K Marinakis

For Owners

Marinakis Chartering, Inc.
For & on behalf of Owners & in accordance with written authority received from Owners.
As Brokers only.

SIGNED

For Charterers

abderrahim abouelouafa - MD

Marinakis Chartering, Inc.
For & on behalf of Owners & in accordance
with written authority received from Owners.
As Brokers only.