## Michael Buisset

| | |
|---|---|
| From: | Michael Buisset |
| Sent: | 08 February 2017 16:36 |
| To: | 'Nicholas Parton' |
| Cc: | Alexis Petrou; Patrick Myers; David Pitlarge; Nils Dahl-Nielsen; Alexis Petrou; 'Chris Primikiris' |
| Subject: | RE: SEAMASTER [HD-UKLive.FID7003955] (DPS:1:SH:2215) [HFWGVA-GVAIMAN.FID1342066] |

Dear Nick,

Thank you for your email of yesterday.

Given that it has taken you about 3 weeks to respond to our email, your request for a response within 24 hours rings rather hollow.

You are turning matters upside down. Perhaps before you embark upon an arbitration which is bound to failure, you may wish to explain your clients' cause of action. You have not even attempted to set out on what basis you consider that a LOI is a shipping document to which COGSA applies. This is because a LOI is not a shipping document under which rights and obligations under the Act arise. The authority for this can be found in the Act itself. Pursuant to Section 1(1) of the Act, the Act applies to any bill of lading; any sea way bill; and any ship delivery order. You will appreciate that a LOI is none of those.

In any event, the bank has not issued any LOI to anyone and it is nonsense to suggest that Arab Bank has demanded delivery of the cargo. The LOI is clear on its terms. It is a request by Agribusiness addressed to the Owners demanding delivery to North Sea Shipping who are Agribusiness' protective agents at Tripoli. The document is signed by Agribusiness and not by Arab Bank. The LOI carries no undertaking by the bank.

The LOI is irrelevant since Owners elected not to comply with its terms and instead, in breach of charterparty, insisted on delivery against the original bills of lading. Having elected this approach, Owners will now have to deliver the cargo to the bill of lading holder. You appear confused about the endorsements on the bill of lading (your comments in your email of 20 January 2017 refer). We thought that we had made the position clear in our email response on the same evening.

For the avoidance of doubt, Arab Bank are not in possession of the bill of lading for the purpose of Section 5.2 of the Act.

Should your clients nevertheless elect to commence arbitration against the bank, any such proceedings will be forcefully resisted. Picking up on your comment about making *"things more expensive"*, this will be a concern for your clients and their P&I Club because Arab Bank will look to your clients for all costs incurred in having to respond to spurious claims in arbitration. An application for security for costs will be made at the earliest opportunity. In that respect, Owners have already provided sufficient emails claiming their impecuniosity.

We hope that sense will prevail.

Kind regards
Michael Buisset
Partner
**Holman Fenwick Willan LLP**
Direct: +41 (0)22 322 4801
Mobile: +41 (0)79 138 3043
michael.buisset@hfw.com

**From:** Nicholas Parton [mailto:N.Parton@jacksonparton.com]
**Sent:** 07 February 2017 18:57
**To:** Michael Buisset
**Cc:** Alexis Petrou; Patrick Myers; David Pitlarge; Nils Dahl-Nielsen; Alexis Petrou; 'Chris Primikiris'
**Subject:** RE: SEAMASTER [HD-UKLive.FID7003955] (DPS:1:SH:2215)

Dear Michael,

In your email below you say, in terms, that the proffering of an LOI cannot trigger liabilities under section 3 of the Carriage of Goods by Sea Act 1992.

Please can you provide any authority for your proposition? If I do not hear from you by tomorrow 16.00 GMT we are instructed to ask Robert Bright QC to accept appointment as sole arbitrator between owners and your clients as bill of lading holders.

Alternatively, if necessary, we shall appoint Robert Bright QC as owners' arbitrator should your clients decide to complicate and make things more expensive by disagreeing to his appointment as sole arbitrator.

Kind Regards

Nick Parton

N.G.Parton
Jackson Parton

# JACKSON PARTON
SOLICITORS

*Authorised and regulated by the Solicitors Regulation Authority*
SRA No: 75273

4th floor
1 Alie Street
London E1 8DE
Tel: 020 7702 0085
Fax: 020 7702 0858
Web: www.jacksonparton.com

A Askew, J Clyne, N Dahl-Nielsen, M Gerakaris-Michanitzis, N Parton, A Patrinos

Consultant: David Hughes

INFORMATION IN THIS MESSAGE IS CONFIDENTIAL AND MAY BE LEGALLY PRIVILEGED. IT IS INTENDED SOLELY FOR THE PERSON TO WHOM IT IS ADDRESSED. IF YOU ARE NOT THE INTENDED RECIPIENT, KINDLY INFORM THE SENDER, AND PLEASE DELETE THE MESSAGE FROM YOUR SYSTEM IMMEDIATELY.

**From:** Michael Buisset [mailto:michael.buisset@hfw.com]
**Sent:** 19 January 2017 20:27
**To:** Nicholas Parton
**Cc:** Alexis Petrou; Patrick Myers; David Pitlarge; Nils Dahl-Nielsen; Alexis Petrou; 'Chris Primikiris'
**Subject:** RE: SEAMASTER [HD-UKLive.FID7003955] (DPS:1:SH:2215)

Thank you for the copy of your email.

No right of lien exists and this has been made perfectly clear to Owners. Their continued wrongful assertion of a lien over this cargo has already caused inordinate delays in this adventure to date – our previous correspondence on this point refers.

For the avoidance of doubt, Arab Bank has not demanded delivery of this cargo. The LOI was a request by Agribusiness to deliver the cargo to their agents in exchange of an indemnity.

Your reference to the Carriage of Goods by Sea Act 1992 is mistaken. The Act does not apply to LOIs and an LOI is not a shipping document under which liabilities under the Act arise. In any event, the terms of the charterparty clearly provide that Charterers - and not receivers - are liable for demurrage. Any attempt to claim demurrage from the receivers of this cargo is bound to failure on that basis alone.

Kind regards
Michael Buisset
Partner
**Holman Fenwick Willan LLP**
Direct: +41 (0)22 322 4801
Mobile: +41 (0)79 138 3043
michael.buisset@hfw.com

---

**From:** Nicholas Parton [mailto:N.Parton@jacksonparton.com]
**Sent:** 19 January 2017 17:47
**To:** 'Chris Primikiris'
**Cc:** Alexis Petrou; Patrick Myers; David Pitlarge; Michael Buisset; Nils Dahl-Nielsen; Alexis Petrou
**Subject:** RE: SEAMASTER [HD-UKLive.FID7003955] (DPS:1:SH:2215)

Dear Sirs,

There is a right of lien under both Lebanese law and English law on the cargo for unpaid demurrage which owners have made clear, as have we on their behalf, which is being, and will continue to be, exercised.

Yesterday an LOI was presented to owners. The terms of the LOI make it cllear beyond doubt that Arab Bank ( Switzerland) Ltd demanded discharge of the cargo without production of the bill of lading into the hands of their agents North Shipping and Chartering, Al Mahjar el Selhi, Tripoli, Lebanon.

The bank thereby took on joint liability for discharge port demurrage/damages for detention and other losses by virtue of section 3 of the Carriage of Goods by Sea Act 1992.

Accordingly owners' rights against your clients, the Bank and the alleged receivers Yousef Freia & Sons are fully reserved.

Regards

N.G.Parton
Jackson Parton

# JACKSON PARTON
SOLICITORS

*Authorised and regulated by the Solicitors Regulation Authority*
*SRA No: 75273*

4th floor
1 Alie Street
London E1 8DE
Tel: 020 7702 0085
Fax: 020 7702 0858
Web: www.jacksonparton.com

A Askew, J Clyne, N Dahl-Nielsen, M Gerakaris-Michanitzis, N Parton, A Patrinos

Consultant: David Hughes

INFORMATION IN THIS MESSAGE IS CONFIDENTIAL AND MAY BE LEGALLY PRIVILEGED. IT IS INTENDED SOLELY FOR THE PERSON TO WHOM IT IS ADDRESSED. IF YOU ARE NOT THE INTENDED RECIPIENT, KINDLY INFORM THE SENDER, AND PLEASE DELETE THE MESSAGE FROM YOUR SYSTEM IMMEDIATELY.

---

**From:** Chris Primikiris [mailto:Chris.Primikiris@hilldickinson.com]
**Sent:** 19 January 2017 15:37
**To:** Nils Dahl-Nielsen
**Cc:** Nicholas Parton; Alexis Petrou; Patrick Myers; David Pitlarge; 'Michael Buisset'
**Subject:** RE: SEAMASTER [HD-UKLive.FID7003955]

Dear Sirs,

We write to follow up on our message of yesterday and to update you on the latest developments.

The original bills of lading have now been released by Bemo Bank in Beirut. The bills are being dispatched to TCS, who are Yousef Freiha & Sons' agents. TCS are currently finalising the discharge formalities and will present the bills of lading to the vessel for discharge tomorrow morning.

Regards,

HILL DICKINSON LLP


Chris Primikiris
Solicitor
Marine, Trade & Energy

Hill Dickinson LLP
The Broadgate Tower, 20 Primrose Street, London, EC2A 2EW
E-mail: chris.primikiris@hilldickinson.com
Direct Tel: +44 (0) 20 7280 9186

---

**From:** David Pitlarge
**Sent:** 18 January 2017 16:25
**To:** Nils Dahl-Nielsen; 'Michael Buisset'
**Cc:** Chris Primikiris; Nicholas Parton; Alexis Petrou; Patrick Myers
**Subject:** RE: SEAMASTER

Many thanks for your message of yesterday evening.

Your summary of the facts does not reflect the reality of the position.


Owners have been preventing the discharge of this cargo on the basis of their non-contractual demands for security or payment of demurrage before it accrues. This will be set out in detail in Charterers' submissions in the arbitration, which your clients commenced in London last month.

Your comments on the decision of the Minister of Agriculture are incorrect. Discharge in Lebanon has been authorised by the Minister of Agriculture in writing and a copy of that decision is attached.

Charterers have called for discharge against LOI as they are expressly entitled to under the charterparty. We attach 2 emails received directly from your clients overnight, which leave no doubt about your clients' intentions. Your clients' refusal to discharge against LOI is a breach of charterparty and in so far as any losses are incurred as a consequence of that breach, Charterers will look to Owners for damages. In the meantime and because Freiha, the buyers of this cargo are keen to receive the cargo as soon as possible, Charterers and all other parties involved in this matter consider that this cargo should now be discharged in Lebanon under the contract of carriage as a matter of priority. In view of your clients' unreasonable response overnight, Owners are now put on notice that discharge will be called for tomorrow against presentation of the Original Bills of Lading. The Original Bills of Lading are currently being released from Bemo Bank in Beirut and will be presented for discharge tomorrow. Please confirm that your clients have made arrangements for berthing and that they will cooperate with all parties to ensure a smooth discharge operation.

We understand that the berth will be free for discharge on Thursday and Friday.

We are puzzled by your suggestion to trouble the Court for an order to discharge the cargo or to sell it in circumstances where discharge is required forthwith at Tripoli under the contract of carriage and that the cargo is subject to a sale contract with Freiha in Lebanon, who have confirmed their intention to honour the terms of the sale contract.

It is very clear from Owners' attached messages overnight that the current situation has nothing to do with preservation of the cargo but only with Owners' unreasonable demands for security. No question of preservation of the cargo arises since Owners are requested to discharge at Tripoli and that there is no dispute about the ownership of the cargo.

We understand that the Original Bills of Lading will be available for presentation to the ship tomorrow and that discharge can occur as soon as possible. Should you nevertheless take the action set out in your email of yesterday, any such action will be defended by our clients on the grounds set out above and we request that you show the Court a copy of this and all relevant correspondence.

We hope that this will now not be necessary, now that discharge in Tripoli is authorised and called for.

We look forward to hearing from you on discharge prospects at Tripoli.


Regards


HILL DICKINSON LLP


David Pitlarge,
Partner
Marine, Trade and Energy
HILL DICKINSON LLP

Tel : +44 (0) 207 280 9251
Mob: + 44 (0) 7792 736663
Email: david.pitlarge@hilldickinson.com

---

**From:** Nils Dahl-Nielsen [mailto:n.dahl-nielsen@jacksonparton.com]
**Sent:** 17 January 2017 16:53
**To:** David Pitlarge; 'Michael Buisset'
**Cc:** Chris Primikiris; Nicholas Parton; Alexis Petrou; Patrick Myers
**Subject:** SEAMASTER

This message originated from outside your organization

---

Dear Sirs

We refer to the above matter where 7,000 MT of soyabean meal in bulk have been on board the vessel since completion of loading on 24 June 2016. The cargo was originally supposed to be discharged in Agadir and in Morocco where the vessel discharged all the other cargo. You failed to discharge the cargo there.

An agreement was reached on 1 September 2016 for the vessel to go to Oran Algeria where your clients supposedly had another buyer for the cargo arranged. Again that sale did not take place and again you failed to discharge the cargo.

Eventually your clients allegedly found a suitable buyer for the cargo in Lebanon. Following negotiations on 7th November further new terms to the charterparty were concluded pursuant to which the vessel proceeded to Tripoli in Lebanon. NOR was tendered at Lebanon at 07.24 local time on 22 November 2016. Yet again that sale did not take place and you again failed to discharge the cargo. A further buyer was then allegedly found by you and, yet again, that buyer did not materialise.

A further buyer has supposedly been found, Freia. That buyer applied for permission to discharge the cargo to the Minister of Agriculture on at least three occasions and permission was refused on the grounds that the cargo had been allegedly rejected at previous disports, the cargo (at that time) had been on board the vessel for over six months, and the laboratory to which the cargo samples had been sent for testing was not recognised.

Recently there is apparently verbal permission, yet to be confirmed, for discharge of the cargo either on to a transhipment vessel which is not contractually permitted, or into a free zone. That unconfirmed permission is also said to be subject to satisfactory testing of the cargo.

The cargo has been on board for nearly seven months now. The cargo is perishable and at risk of insect infestation. There is now a grave risk that it will be rendered of little value if it is not discharged and sold as promptly as possible.

Also there is doubt as to the ownership of the cargo. The present intended buyer, we understand, is not prepared to commit to the purchase until after discharge of the cargo and its inspection.

In view of the above our clients will very shortly be seeking the assistance of the Court in order to resolve matters. In particular our clients will be seeking orders under CPR 25.1 (c) (v) alternatively under CPR 86 that:

Our clients may take steps to sell the cargo of soya bean meal in bulk presently on its vessel due to the perishable nature of the cargo, the continued non-payment of amounts owing to them which increase daily, and your clients' continued failure to sell and/or discharge the cargo, and in so doing will not be in breach of any obligations or duties whatsoever owed to your clients or any party, including in contract, bailment, negligence or in any other tort;

Our clients may, following the sale of the cargo, deduct their costs, expenses, demurrage and damages with the balance held for your clients' account or paid into court. In selling the cargo our client gives good title to the goods to any buyer.

Alternatively pursuant to CPR 86 our clients may discharge the cargo of soya bean meal in bulk presently on its vessel SEAMASTER and, in so doing, they will not be in breach of any obligations or duties whatsoever owed to your clients or any other party, including in contract, bailment, negligence or in any other tort.

Following discharge of the aforesaid cargo, our clients may, if necessary, arrange for the cargo to be stored pending the determination of any claim in respect of the subject matter and those storage costs are to be paid by the ultimate party deemed to be the owner of the cargo.

In addition or alternatively, our clients may, at its option, arrange for the sale of the cargo with the net proceeds (having deducted their costs, expenses and demurrage/detention and monies due) to be held for the cargo owner's account or paid into court. In selling the cargo our clients gives good title to the goods to any buyer.

We shall be making the application to Court on an urgent basis and would grateful for your confirmation by return that you are authorised to accept service of proceedings. Should we not hear from you by 1700 on 18 January 2017 we shall seek the Court's permission for service out of the jurisdiction and by an alternative method and proceed ex parte with notice to your clients by email.

We look forward to hearing from you.


Kind regards

Nils Dahl-Nielsen
JACKSON PARTON
Solicitors

Authorised & regulated by the Solicitors Regulation Authority
SRA No. 75273

A Askew, J Clyne, N Dahl-Nielsen, M Gerakaris,
N Parton, A Patrinos; Consultant: D Hughes

1 Alie Street, London E1 8DE
Tel: +44 (0)20 7702 0085
Fax: +44 (0)20 7702 0858
Web: www.jacksonparton.com

INFORMATION IN THIS MESSAGE IS CONFIDENTIAL AND MAY BE LEGALLY PRIVILEGED. IT IS INTENDED SOLELY FOR THE PERSON TO WHOM IT IS ADDRESSED. IF YOU ARE NOT THE INTENDED RECIPIENT, KINDLY INFORM THE SENDER, AND PLEASE DELETE THE MESSAGE FROM YOUR SYSTEM IMMEDIATELY

# Hill Dickinson
www.hilldickinson.com

This email and its contents, together with any attachments, are confidential to the sender and the intended recipient(s) and may be covered by legal professional privilege. If you are not the intended recipient of this email and its attachments (if any), you must take no action based upon them, nor must you copy them or show them to anyone. Please contact the sender if you believe you have received this email in error.

Hill Dickinson LLP is a firm of lawyers authorised and regulated by the Solicitors Regulation Authority under registration number 424853. It is a limited liability partnership registered in England and Wales No. OC314079. Its registered office is at No.1 St. Paul's Square, Liverpool L3 9SJ.

Click here to report this email as spam.



# Lawyers for international commerce   hfw.com

Holman Fenwick Willan Switzerland LLP, Cours de Rive 13-15, 6th Floor, 1204 Geneva, Switzerland   T: +41 (0)22 322 4800   F: +41 (0)23 322 4888

Holman Fenwick Willan Switzerland LLP is a limited liability partnership registered in England and Wales (with registered number OC357732) and is authorised and regulated by the UK Solicitors Regulation Authority, with registered number 548746. A list of members' names is open to inspection at the registered office, Friary Court, 65 Crutched Friars, London EC3N 2AE.

This e-mail (including all attachments) is intended for the named addressee. It is confidential and may be privileged. If you have received it in error, please contact us immediately and then delete it. You should not disclose its contents to any other person.

This message has been scanned for viruses by BlackSpider MailControl.

Houston   São Paulo   London   Paris   Brussels   Geneva   Piraeus   Beirut   Riyadh   Kuwait   Dubai
Singapore   Hong Kong   Shanghai   Perth   Melbourne   Sydney

 Please consider your environmental responsibility before printing this email.