UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ARAB BANK (SWITZERLAND) LTD.,

Plaintiff,

-against-

SEA MASTER SHIPPING INC.,
In Personam,

and

M/V "SEA MASTER", her engines, rigging, equipment and appurtenances, etc.
In Rem,

Defendants.

**INDEX NUMBER**
**17 CV_469 (VLB)**

PLAINTIFF, ARAB BANK (SWITZERLAND) LTD'S, MEMORANDUM OF LAW IN SUPPORT OF THE ENFORCEMENT OF A FOREIGN ARBITRAL AWARD AND THE RELEASE OF ESCROW FUNDS

Mavronicolas Law Group
Anthony Mavronicolas
850 Canal Street, 3rd Floor
Stamford, Ct. 06902
(203) 4877014 phone
(212) 7589491 fax
amavronicolas@mavrolaw.com

## TABLE OF CONTENT

Page

TABLE OF AUTHORITIES........................................................ 3

PRELIMINARY STATEMENT........................................................ 4

STATEMENT OF FACTS........................................................ 5

A. The Commencement of Proceedings to Obtain Security in Aid of London Arbitration........................................................ 5

B. Sea Master's Motion for Countersecurity in Aid of London Arbitration........................................................ 6

C. The London Arbitration Proceedings........................................................ 8

D. Sea Master's Refusal to Comply with the fourth Arbitration Award........................................................ 8

E. Additional London Proceedings........................................................ 10

LEGAL ARGUMENT........................................................ 10

I. AS WITH ANY CONTRACT THE ESCROW AGREEMENT SHOULD BE ENFORCED AS ITS PLAIN LANGUAGE PROVIDES........................................................ 10

II. THE DECEMBER 21, 2021 FOURTH ARBITRATION AWARD DISMISSING SEA MASTER'S COUNTERCLAIMS SHOULD BE ENFORCED AS REQUIRED UNDER THE UNITED NATIONS CONVENTION ON THE RECOGNITION AND ENFORCEMENT OF FOREIGN ARBITRAL AWARDS.......... 13

CONCLUSION........................................................ 17

## TABLE OF AUTHORITIES

Cases | Page

*CBF Industria De Gusa S/A et al. v. AMCI Holdings Inc. et al.,*
=========== 16

*Encyclopaedia Universalis S.A. v. Encyclopaedia Britannica Inc.,*
403 F.3d 85, 90 (2d Cir, 2005)…………………………….. 13,14

*GE Transport (Shenyang) Co. v. A-Power Energy Generation Systems,*
2016 U.S. Dist. Lexis 81367, p.3 (SDNY)…………………. 13,14

*Metropolitan Life Insurance Company v. RJR Nabisco Incorporated,*
906 F. 2d 884, 889 (1990)…………………………………… 12

*Parsons & Whitmore Overseas Co. v. Societe Generale De Industrie Du Papier,* 508 F.2d 969 (2nd Cir. 1974)……….……………….... 15

*Telenor Mobile Commc'ns AS v. Storm LLC,* 585 F.3d 396, 405
(2d Cir. 2009)..…………………………………………….... 14

*United Illuminating Company v. Wisvet-Connecticut, LLC,*
259 Conn. 665, 791 A.2d. 546 (2002)……………………… 11

*Willemijn Houdstermaatschappij BV v. Standard Microsystems Corp.,*
103 F.3d 9, 12 (2d 1997)…………………………………… 14

*Yusuf Ahmed Alghanim & Sons WLL v. Toys "R" Us Inc.,*
126 F.3d 15, 23 (2d Cir. 1997)………………………………… 14

Statutes

Connecticut Contract Law, at 670…………………………………… 11

Federal Arbitration Act, 9 U.S.C. §201 et seq.,
Article V, New York Convention, Chapter 2……………… 13,14,16

**PRELIMINARY STATEMENT**

Plaintiff, ARAB BANK (SWITZERLAND) LTD., ("Arab Bank") by its attorneys, Mavronicolas Law Group, seeks the enforcement of a December 21, 2020, fourth Arbitration Award and the issuance of an order enforcing a June 15, 2018, Escrow Agreement directing the release to Arab Bank from that Escrow Agreement of two million seven hundred ninety-two thousand four hundred sixty-six dollars and sixty-eight cents ($2,792,466.68). (Exhibit 1)[1] Defendant, Sea Master Shipping Inc., now resists the release of the escrow funds.

The Escrow Agreement was established in compliance with the Honorable Warren W. Eginton's April 27, 2017 Order directing the posting by Plaintiff of countersecurity for Owner's counterclaims lodged "…in the London arbitration against the Plaintiff…" (Dkt.42) On February 24, 2021, counsel for Arab Bank wrote counsel for defendant, Sea Master Shipping Inc. ("Sea Master"), to notify them that the December 21, 2020 fourth Arbitration Award had dismissed Sea Master's counterclaims so that, pursuant to the terms of the Escrow Agreement, the escrowed funds would be released to Arab Bank. (Exhibit 2) On February 26, 2021, counsel for Sea Master responded objecting to the release of the escrowed funds on the grounds that: "The decision to which you refer in your communications is not a decision on the merits, but rather a procedural decision reflecting the initial panel's view on its jurisdiction to entertain the claims but not a determination the validity of same". (Exhibit 3) Sea Master, through their English counsel, has been repeatedly asked to specify what counterclaims, if any, remain to be decided and the forum where such

[1] References to Exhibits 1-3 attached hereto.

counterclaims should be presented. (Buisset Affirm. ¶ 34) To date, Sea Master has failed to provide any specifics as to its alleged remaining counterclaims or the forum where they may be adjudicated. (Buisset Affirm. ¶ 35)[2]

Sea Master's failure to either specify its alleged counterclaims or to proceed to prosecute them prompted the parties joint application to have these proceedings re-opened, to have the Court resolve this dispute over the release of the escrowed funds (Dkt.58). This Honorable Court's Order to Show Cause (Dkt.61) and the Court's subsequent minute order directed briefing on this escrow funds release dispute. (Dkt.63)

## STATEMENT OF FACTS

### A. The Commencement of Proceedings to Obtain Security in Aid of London Arbitration:

These proceedings began on March 22, 2017, with a Verified Complaint against Sea Master as vessel owner, and the M/V Sea Master *in rem* for the mis-delivery of a marine cargo in order to obtain security from Sea Master in aid of a London arbitration Arab Bank had commenced against Sea Master. (Dkt.1 ¶ 13) On March 24, 2017, Sea Master filed a Verified Answer with Counterclaims against Arab Bank. (Dkt.18) In its Verified Answer Sea Master first admitted the commencement of the London arbitration proceedings by Arab Bank and raised as an affirmative defense the London arbitration proceedings: "This forum is improper because the claims asserted by Plaintiff are properly to be resolved in London arbitration as agreed by Plaintiff and Defendant." (Dkt.18 ¶ 13, 24) Sea Master then asserted

[2] References to the September 10, 2021 Affirmation of Michael Buisset filed herein

counterclaims against Arab Bank and in doing so explicitly admitted that those counterclaims would be adjudicated in London arbitration: "Defendant reserve all rights to arbitrate the substantive aspect of the counterclaim in London arbitration." (Dkt.18 ¶ 30,32)

**B. Sea Master's Motion for Countersecurity in Aid of London Arbitration:**

On March 27, 2017, Sea Master came forward with a Motion for Countersecurity. (Dkt.21) In support of that Motion, Sea Master filed the Affirmation of Costas Marinakis, the manager of the operational agents for M/V Sea Master. (Dkt.21 ¶ 2) In that affrimation, under penalty of perjury, Mr. Marinakis provided his purported review of the contractual relationships giving rise to the proceedings before the court and his description of the basis and calculation of Sea Master's counterclaim and "… the state of the proceedings in London (where the Bank's claim and the Owner's counterclaims will be decided." (Dkt.21 ¶ 4)

With respect to the proceedings before this Court, attesting on behalf of Sea Master, Marinakis stated: "As noted above, I appreciate that it is not for the Court to determine the merits of the claims between the parties,..." (Dkt.21 ¶ 40) Then with respect to the London arbitration proceedings and Sea Master's counterclaims, Marinakis stated: " The owner has responded, appointing its arbitrator in respect to its defense of the Bank's claim and for purposes of prosecuting its counterclaim for recovery of losses identified above …under contract, quasi contract and tort theories of recovery." (Dkt.21 ¶ 44)

Counsel for Sea Master then submitted a Memorandum of Law in Support of Sea Master's motion for countersecurity in which they explained that the countersecurity was sought in aid of Sea Master's prosecution of its counterclaims in the London arbitration:

> "Arbitration has been commenced in London regarding the claims arising from this voyage. The Bank recently appointed its arbitrator in respect to its claim of alleged misdelivery (on which it arrested the vessel for security), and the Owner has responded appointing its arbitrator both in response to the Bank's claim and in connection with its counterclaims for demurrage and related transportation and floating storage costs (on which it now seeks countersecurity)…" (Dkt.23, p.5)

The Honorable Warren W. Eginton issued an Order on April 27, 2017, directing Arab Bank to post countersecurity. (Dkt.42) In doing so the Court found: "Whereas the Defendants filed a claim of Owner, an answer with counterclaims and thereafter lodged counterclaims in London arbitration against the Plaintiff for, *inter alia*, demurrage, detention and damages, as set our with greater particularity in the counterclaim and submission in London;…). (Dkt.42. p.1) The Court then went on to decide: "This Court will retain jurisdiction to enforce any action or award(s) as may be entered in London arbitration, with the adjudication of the merits of the claim and counterclaim being stayed pending London arbitration." (Dkt.42, p.3)

Thus with the conclusion of all proceedings before this Court stayed pending the adjudication of Arab Bank's claim and Sea Master's counterclaims on the merits, proceedings in London continued.

The parties then entered into the Escrow Agreement which provide for the release of the escrowed funds as follows:

> 5. The Escrow Monies shall be distributed in the following manner:
>
> …
>
> c. M&D shall pay out the Escrow Monies to the order of the Bank in the event Owners' Claims are dismissed on the merits by virtue of an award or judgment of a tribunal or court of competent jurisdiction, and after all appeals (if any) or after the time for an appeal has run. (Exhibit 1)

C. **The London Arbitration Proceedings:**

The description of the London arbitration proceedings and the results of those proceedings that concluded with the issuance of the December 21, 2021 Arbitration Award are fully set forth in the Declaration of Michael Buisset that has been submitted herein, the solicitor that represented Arab Bank in all those London proceedings. (Buisset Affirm. ¶ 5-16) Mr. Buisset attests to the Court the protracted four year arbitral history in this matter and explains the many arbitration awards that arbitral process produced.

We only note here the most salient of those facts for the Court's consideration for the instant proceedings regarding the dispute over the release of the escrowed funds.

**D. Sea Master's Refusal to Comply with the fourth Arbitration Award**

It is indisputable that over the course of four years and as many Arbitration Awards, Sea Master prosecuted the claims Judge Eginton ordered the posting of

security for. And if Sea Master believed it had additional claims to prosecute, it certainly was given the opportunity to prosecute those putative claims as well. In either case, for Sea Master to now obstruct the release of the escrowed funds posted as countersecurity is both factually and legally groundless.

Factually, the last December 21, 2020 fourth Arbitration Award could not have been more explicit in dismissing Sea Master's counterclaims:

> … Do Hereby Make Issue and Publish this our Final Award as follows:
>
> …
>
> 3. The counterclaims brought by the Second Respondent against the Claimant arising out of or in connection with the contract contained in or evidence by the Bill of Lading no 12 issued in Zurich on 8 November are dismissed. (S Exhibit 4. p.37)[3]

As the arbitrators in their fourth Award explain, the Second Respondent is in fact Sea Master. (Id. )

Concomitantly, when seeking countersecurity Sea Master took the position before the Court that the countersecurity was sought in aid of Sea Master's prosecution of its counterclaims in the London arbitration. ((Dkt.23, p.5) Those representations were in fact reflected in Judge Eginton's decision ordering the posting of that countersecurity. (Dkt.42. p.1) )

It appears Sea Master's effort to obstruct the release of the escrow funds by alleging that it has counterclaims that remain to be adjudicated relies on the claim that the arbitrators somehow addressed Sea Master's counterclaim only as procedural matters. (Exhibit 3) Although as yet no real explanation as to how that

[3] References to Sealed Exhibits 1-4 filed herein

procedural issue prevented Sea Master from prosecuting its counterclaim has been provided by Sea Master, we are aware of only one procedural ruling by the London arbitrators to which Sea Master might be referring. And it is clear that procedural ruling in the August 18, 2017 first Arbitration Award and its subsequent appeal by Sea Master actually left Sea Master free to prosecute its counterclaims. (Buisset Affirm ¶ 22, 25) To now attempt to resurrect its counterclaim in London arbitration, or before this Court as it appears they may attempt, is untenable.

**E Additional London Proceedings**

In response to Sea Master's as yet veiled claim that it has remaining claims to prosecute and is free to adjudicate those claims before this Court, Arab Bank has returned to the arbitrators in London seeking a declaration from the Tribunal that Sea Master has no remaining counterclaims it can pursue against Arab Bank or seeking an anti-suit injunction precluding Sea Master from prosecuting claims against Arab Bank in any jurisdiction.(Buisset Affirm ¶ 51 ) Now revealing that it may indeed attempt to prosecute these putative counterclaims before this Court, Sea Master has now taken the position in London that the arbitrators are functus officio-without jurisdiction to hear any application by the parties, which Arab Bank refutes (Buisset Affirm ¶ 53 ) Clearly, if Sea Master has now taken the position that the arbitration proceedings in London have concluded, the countersecurity that was ordered posted in aid of that arbitration by Judge Eginton, must be released.

## LEGAL ARGUMENT

### I. AS WITH ANY CONTRACT THE ESCROW AGREEMENT SHOULD BE ENFORCED AS ITS PLAIN LANGUAGE PROVIDES

The terms of the Escrow Agreement governing the release of the escrowed funds are unambiguous:

> 5. The Escrow Monies shall be distributed in the following manner:
>
> …
>
> c. M&D shall pay out the Escrow Monies to the order of the Bank in the event Owners' Claims are dismissed on the merits by virtue of an award or judgment of a tribunal or court of competent jurisdiction, and after all appeals (if any) or after the time for an appeal has run. (Exhibit 1)

Concomitantly, the arbitrators' unanimous decision in the December 21, 2021, fourth Arbitration Award is equally clear in having dismissed Sea Master's counterclaims;

> … Do Hereby Make Issue and Publish this our Final Award as follows:
>
> …
>
> 3. The counterclaims brought by the Second Respondent against the Claimant arising out of or in connection with the contract contained in or evidence by the Bill of Lading no 12 issued in Zurich on 8 November are dismissed. (S Exhibit 4)

With respect to what law governs the Escrow Agreement , it provides:

Clause 15 of the Escrow Agreement provides:

> This Agreement shall be governed by and construed in accordance with the laws of the State of Connecticut.. (Exhibit 1)

The application of Connecticut Contract Law to give effect to the terms of the Escrow Agreement is straightforward. In *United illuminating Company v. Wisvet-Connecticut, LLC* 259 Conn. 665, 791 A.2d. 546 (2002) the Connecticut Supreme Court was called upon to review a lower court's interpretation of a contract under Connecticut Contract Law. In doing so the court explained that the words of a

contract "…must be given 'their natural and ordinary meaning.' " (citation omitted) (supra at 670) Not only must the terms of the Escrow Agreement be given their natural and ordinary meaning, but when created by sophisticated commercial parties the Supreme Court applied the presumption that those terms are treated as definitive:

> Furthermore, a presumption that the language used is definitive arises when, as in the present case, the contract at issue is between sophisticated parties and is commercial in nature, (citation omitted) Id.

Not only should the terms of the Escrow Agreement be given their natural and plain meaning with definitive treatment, but as the Court of Appeals for the Second Circuit in *Metropolitan Life Insurance Company v. RJR Nabisco Incorporated,* 906 F. 2d 884,889 (1990) explained, it is the intention of the parties that need to be given effect in contract actions: "In a contract action, the court's general objective should be to give effect to the intentions or the parties in entering into the agreement".

The application of these principles to the Escrow Agreement before the Court is straightforward. The intentions of the parties in entering into the Escrow Agreement are undisputable. In the Sea Master affirmation that was submitted to the Court in support of its motion for countersecurity, Sea Master's agent swore that the countersecurity was sought in aid of Sea Master prosecuting its counterclaims in the London arbitration. (Dkt.21 ¶ 4, 44) Concomitantly, in its Verified Answer Sea Master specifically reserved the right to prosecute its counterclaims in the London arbitration. (Dkt.18 ¶ 30,32) It was in fact one of Sea Master's affirmative defenses that this Court was an improper forum on the merits because the parties' claims had to be adjudicated in the London Arbitration. (Dkt.18 ¶ 13,24) And it was this clear intention of the parties that the countersecurity be posted in aid of the London

arbitration which Judge Eginton relied upon in his decision ordering the posting of that countersecurity by Arab Bank. (Dkt.42 p.1)

Similarly, the definitive, natural and plain meaning of the Escrow Agreement's terms regarding the release of the escrowed funds are undisputable: the funds must be released to Arab Bank in : "…the event Owners' Claims are dismissed on the merits by virtue of an award or judgment of a tribunal or court of competent jurisdiction, …" (Exhibit 1, ¶ 5) In the fourth Arbitration Award of December 21, 2020, the unanimous arbitrators did just that:

> 3. The counterclaims brought by the Second Respondent against the Claimant arising out of or in connection with the contract contained in or evidence by the Bill of Lading no 12 issued in Zurich on 8 November are dismissed. (S Exhibit 4, p.37)

Accordingly, the escrowed funds should now be released as specifically provided for in the Escrow Agreement's unambiguous terms.

## II. THE DECEMBER 21, 2021 FOURTH ARBITRATION AWARD DISMISSING SEA MASTER'S COUNTERCLAIMS SHOULD BE ENFORCED AS REQUIRED UNDER THE UNITED NATIONS CONVENTION ON THE RECOGNITION AND ENFORCEMENT OF FOREIGN ARBITRAL AWARDS.

The United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards, Chapter 2 of the Federal Arbitration Act, 9 U.S.C. § 201 *et.seq.* ("New York Convention") guides the Court's treatment of foreign arbitral awards such as the December 21, 2021, fourth Arbitration Award. (S Exhibit 4)

In *GE Transport (Shenyang) Co. v. A-Power Energy Generation Systems,* 2016 U.S. Dist. Lexis 81367, p.3 (SDNY) Judge Englemayer of the United States

District for the Southern District of New York was presented with a foreign arbitration award which the Court found fell under the New York Convention. In reviewing the applicable legal standard for enforcing arbitral awards under the New York Convention the Court noted that a party opposing enforcement bears a heavy burden of proving one of the exclusive seven grounds of Article V of the New York Convention. Id. See *Encyclopaedia Universalis S.A. v. Encyclopaedia Britannica Inc.* 403 F.3d 85,90 (2d Cir, 2005), *Telenor Mobile Commc'ns AS v. Storm LLC,* 585 F. 3d. 396,405 (2d Cir. 2009) The Court went on to cite three other decisions of the United States Court of Appeals for the Second Circuit to explain that the applicable legal standard included the recognition of a strong public policy in favor of international arbitrations settling disputes efficiently and thus avoiding protracted expensive litigations so that the court's reviews of arbitral awards under the New York Convention must be "very limited". Id. *Encyclopaedia Universalis S.A. v. Encyclopaedia Britannica Inc.* 403 F.3d 85,90 (2d Cir. 2005), *Yusuf Ahmed Alghanim & Sons WLL v. Toys "R" Us Inc.* 126 F. 3d 15,23 (2d Cir.1997), *Willemijn Houdstermaatschappij BV v Standard Microsystems Corp.* 103 F.3d 9,12 (2d.1997)

The Court went on to explain, however, that petitions to confirm arbitral awards are treated akin to motions for summary judgment in which the petitioner must show that there is no dispute as to material fact, that the petitioner is entitled to judgment as a matter of law and that all permissible inferences must be drawn in the favor of the party opposing recognition. *GE Transport (Shenyang) Co.* at p.4

Here Sea Master has, to date, not raised any of the seven grounds found in Article V of the New York Convention to refuse enforcement of a foreign arbitral

award.[4] Instead, it is anticipated that Sea Master will attempt to raise an issue outside the award: that Sea Master still has counterclaims that need to be adjudicated and that those counterclaims can be adjudicated before this Court because the arbitration proceedings in London have concluded. (Buisset Affirm ¶ 51) Simply put, the fourth Arbitration Award is clear in its unanimous ruling dismissing Sea Master's counterclaims, refuting Sea Master's position:

> … Do Hereby Make Issue and Publish this our Final Award as follows: …
>
> 3. The counterclaims brought by the Second Respondent against the Claimant arising out of or in connection with the contract contained in or evidence by the Bill of Lading no 12 issued in Zurich on 8 November are dismissed. (S Exhibit 4, p,37)

In reviewing the fourth Arbitration Award, the Court should give the award the most plausible interpretation it can. In the leading case of *Parsons & Whitmore Overseas Co. v. Societe Generale De Industrie Du Papier,* 508 F. 2d 969 (2nd Cir. 1974), the Second Circuit affirmed a district court decision confirming an arbitration award under the New York Convention in which the court below had interpreted the award before it to exclude an item of damage the party seeking confirmation sought to have included in the judgment entered on that award. *Parsons & Whitmore Overseas Co*. at 978. The Second Circuit concluded that the lower court's enforcement of the award excluding that item of damages "reflects the most plausible

[4] Those seven grounds include: incapacity of party, inadequate notice of appointment of arbitrator, award beyond the scope of submission by parties, arbitration procedure or authorities not in accordance with parties arbitration agreement or law of the place of arbitration, arbitral award not final and enforcement of award contrary to public policy of place where enforcement sought. Article V, New York Convention, Chapter 2 of the Federal Arbitration Act, 9 U.S.C. § 201 *et seq*.

interpretation of [the award]…" Id. Here the four years of arbitration in London, culminating in the fourth Arbitration Award, and Sea Master's position now that the arbitration in London has concluded, which Arab Bank refutes as to the ability of the arbitrators to issue an anti-suit injunction, support the most plausible interpretation that the fourth Arbitration Award dismissed Sea Master's counterclaims. (Buisset Affirm ¶ 54)

As noted above, although Sea Master has avoided identifying the putative counterclaim it asserts remains to be adjudicated, it can not ask this Court to go beyond the clear language of the fourth Arbitration Award dismissing Sea Master's counterclaims. Clearly, Sea Master's counterclaims where dismissed on the merits and if Sea Master failed to prosecute them in four years of London arbitration, they are no longer permitted to do so under English Law. (Buisset Affirm ¶ 54) Nor are they allowed to do so before this Court under the New York Convention. As the United States Court of Appeals for the Second Circuit explained in *CBF Industria De Gusa S/A et. al. v. AMCI Holdings Inc. et al.* . 2017 U.S. App. LEXIS 3815, (2d Cir. Mar. 2, 2017, Nos. 15-1133-cv(L), 15-1146-cv(CON), under the New York Convention the country in which a foreign arbitration award is made has primary jurisdiction over that award, which leaves the courts of that nation free to set aside or modify an award in accordance with its domestic arbitral law. (supra at p 31) However, when a foreign arbitration award is brought to be enforced before the court of another nations, as is the case here, those enforcing courts have secondary jurisdiction in which enforcement may only be refused on the limited grounds provided for in the New York Convention. (id.) Those seven grounds include:

incapacity of party, inadequate notice of appointment of arbitrator, award beyond the scope of submission by parties, arbitration procedure or authorities not in accordance with parties arbitration agreement or law of the place of arbitration, arbitral award not final and enforcement of award contrary to public policy. Article V, New York Convention, Chapter 2 of the Federal Arbitration Act, 9 U.S.C. § 201 *et seq*. To date, Sea Master has not raised any of those grounds as reasons why the fourth Arbitration Award should not be enforced to allow the escrow funds to be released. And as a Court only with secondary jurisdiction to consider the fourth Arbitration Award this Court can not go beyond those seven grounds to indulge Sea Master's search in four years of arbitration proceedings, resulting in four arbitration awards, for chimerical counterclaims to further obstruct the release of countersecurity ordered posted by this Court in aid of that foreign arbitration.

## CONCLUSION

WHEREFORE, Plaintiff respectfully prays that this Honorable Court:

1. Enforce the December 21, 2020, fourth Arbitration Award dismissing Defendant's counterclaims,

2, Order the immediate release of the escrowed funds posted as countersecurity pursuant to this Honorable Court's April 27, 2017 Order,

3. And such other and further relief as this Honorable Court deems appropriate in the circumstances.

Stamford, Connecticut
September 10, 2021

Respectfully Submitted,
Mavronicolas Law Group.
Attorneys for Plaintiff

Arab Bank (Switzerland) Ltd.
By:/S/Anthony J. Mavronicolas
Anthony J. Mavronicolas
850 Canal St. 3rd Floor
Stamford, CT 06902
Tel: (203) 4877014
Fax: (212) 7589491
amavronicolas@mavrolaw.com

To: Via ECF
Peter J, Gutowski
Freehill, Hogan and Mahar
80 Pine Street
New York, New York 10005
Counsel for Defendant